Patrick J. RYAN, Plaintiff,

v.

**LOWER MERION TOWNSHIP,**
*et. al.,* Defendants.

No. CIV.A.01–1798.

United States District Court,
E.D. Pennsylvania.

June 12, 2002.

Joseph P. Ryan, Ryan, Emory & Ryan, LLP, Paoli, PA, for Plaintiff.

D. Barry Pritchard, Jr., Eric B. Smith, High, Swartz, Roberts & Seidel, Norristown, PA, Dougherty, Levinthal & Prce, Moosic, PA, for Defendants.

### *MEMORANDUM AND ORDER*

JOYNER, District Judge.

Presently before the Court is the Motion for Summary Judgment of Defendants Lower Merion Township (the "Township"), Robert E. Duncan ("Duncan"), Robert S. Ryan ("Defendant Ryan"), and Michael J.

Morris ("Morris") [1](collectively referred to as "Defendants").[2] This case arises from a zoning dispute between Plaintiff Patrick Ryan ("Plaintiff" or "Plaintiff Ryan") and the Defendants. For the reasons that follow, the Motion for Summary Judgment will be granted in part and denied in part.

## BACKGROUND

The dispute in this case centers on whether the Defendants properly revoked, and properly affirmed the revocation of, a Use Permit issued to Plaintiff. On February 9, 1999, Plaintiff entered into an Agreement of Sale to purchase a property located at 14 North Merion Avenue, Lower Merion Township, Pennsylvania (the "property").[3] This property was owned by Paul Flanigan who operated a restaurant/tavern called the Prime Minister on the premises. The mortgage holder had foreclosed on the property and a sheriff's sale was scheduled for July 21, 1999. Plaintiff determined that to make his business feasible at this location, he would need to renovate the second floor mezzanine to convert it to a full second floor. Thus, in the Agreement of Sale Plaintiff included a contingency clause making the sale contingent on Plaintiff obtaining approval to complete the second floor renovations.

Plaintiff hired an architect, James T. MacAllister, Jr. ("MacAllister") to draw plans for the renovations. Plaintiff's renovations included expanding the storage space in the basement, improving the restrooms, repositioning and redesigning the bar on the first floor, expanding the second floor to fill in the open area of the mezzanine, and moving the kitchen from the first floor to the second floor. The renovated second floor would be able to seat twelve people at the bar, twenty-four people at tables, and eighteen people at a counter against the wall.

Plaintiff then met with Duncan, who is the Director of Building Regulations and Zoning Officer for Lower Merion Township, to review the architectural plan, including the expansion of the second floor. Duncan told Plaintiff that the contemplated addition may raise an issue with a Township ordinance requiring a certain number of parking spaces.[4] However, Duncan further informed Plaintiff that be-

1. Defendant Ryan and Morris were sued in both their individual and official capacities.

2. Also pending before the Court is Defendants' Motion for Judgment on the Pleadings. However, because defendants raised the same issues in the Motion for Summary Judgment as in the Motion for Judgement on the Pleadings, the Court will address each of the issues in its resolution of the Motion for Summary Judgment.

3. Plaintiff is a member of the family that owned Smokey Joe's in Wayne, Pennsylvania. When the family decided to close Smokey Joe's, Plaintiff began to search for a location for a restaurant/bar in Bryn Mawr, Pennsylvania.

4. The Township Ordinance at issue provides, in pertinent part, as follows:

Any of the following buildings hereafter erected, any building hereafter converted into one of the following buildings and any open areas hereafter used for commercial purposes shall be provided with minimum parking spaces as set forth below, which spaces shall be readily accessible to and within a reasonable distance from the buildings served thereby. Such spaces shall be on the same lot as the principal building or open area. In the case of an extension of or addition to an existing building or the extension of a use within an existing building, such requirements of parking spaces shall apply only with respect to such extension or addition.
. . .
H. Restaurants, drive-in restaurants and taprooms: at least one parking space for each 100 square feet of gross floor area. . . .
Lower Merion Township Code § 155–94.

cause the proposed use of the space was a restaurant, Plaintiff would qualify to use off-street public parking spaces pursuant to Township Ordinance.[5] Plaintiff completed a "Change of Use or Occupancy Application" on which he indicated that the proposed use of the building was a restaurant.

On March 4, 1999, Duncan issued a Use Permit and assigned use of municipal parking spaces "to meet the parking requirements of the zoning code." Upon receipt of the use permit, Plaintiff commissioned final architectural plans and made applications to both the Pennsylvania Department of Labor and Industry and the Pennsylvania Liquor Control Board.

On March 23, 1999, notice of the pending liquor license transfer to the Plaintiff's corporation, P.J. Ryan's, Inc. was posted at the property. Plaintiff alleges that after this posting, several local newspapers wrote articles reporting that "Smokey Joe's was moving to the Prime Minister."[6] Plaintiff further alleges that after these articles were published, public opposition groups began to state their disapproval with Smokey Joe's moving to the property to Township officials. These groups included the Bryn Mawr Civic Association and the Morton Road Residence Association. Duncan became aware that the Plaintiff was one of the previous owners of Smokey Joe's from Hank Wilson of the Bryn Mawr Civic Association.[7] Hank Wilson also contacted Charles Bloom, a Ward Commissioner, to tell him that Smokey Joe's was buying the Prime Minister. Mr. Bloom testified that he spoke with someone from the Township's Building and Codes Department who confirmed that this was true.

On April 7, 1999, Plaintiff and his architect met with the Township's Fire Marshall and Duncan to discuss whether the building would need sprinklers. Prior to Plaintiff's arrival at the meeting, Duncan or the Fire Marshall asked the architect whether there would be any karaoke at the facility. The architect responded that there could be karaoke on the first floor in an area where the tables could be moved aside. Duncan or the Fire Marshall then asked whether there would be dancing. The architect told them there could be dancing one night a week in the same area of the first floor. After Plaintiff arrived at the meeting, there was no more discussion about karaoke or dancing. At the conclusion of the meeting, Duncan and the Fire Marshall confirmed that no zoning or building code issues remained unresolved.

However, by letter dated April 8, 1999 ("the Revocation Letter"), Duncan notified Plaintiff that the approval of the Use Permit was revoked. The Revocation Letter stated that during the April 7, 1999 meeting:

5. The Ordinance further provides that for restaurant use some of the necessary spaces can be taken from public off-street parking as follows:

Z. Off-street public parking spaces.
(1) If adequate on-site parking is not available, or the Director of Building Regulations and Zoning determines that such parking is not feasible or appropriate, the parking requirements established in Subsection H hereinabove for that portion of an existing building hereafter converted for use as a restaurant may be met by designating off-street public parking spaces as set forth herein, provided that they are within a one-thousand-foot radius of the proposed use....

Lower Merion Township Code § 155–95(Z).

6. In his deposition testimony, Plaintiff identifies only one article in the Bryn Mawr Villager. Neither party has provided the Court with copies of any articles.

7. Duncan does not recall when he talked with Hank Wilson, but he admits that it could have been before he revoked Plaintiff's use permit.

it was discovered that the second floor area will primarily be used as a taproom and the tables and chairs that will exist on both floors will be moved after dinner to create an open assembly area used as a dance floor.

Based on your description of the proposed use, I have determined that the primary use of this building is a Taproom and/or Night Club. This use does not authorize you to utilize the public parking lots to comply with Township's zoning code. This provision is limited to a Restaurant Use. Also a portion of this space will be used for Public Assembly which requires one parking space for every 50 square feet of floor are devoted to Public Assembly.

Further, in a memorandum dated April 23, 1999, Duncan memorialized a conversation he had with a Ward Commissioner, Jim Ettelson, concerning the Plaintiff's purchase of the Property. The memorandum indicates that "[Ettelson] was interested in helping them [Plaintiff] with the approval process until [Duncan] informed him that there was significant opposition from the residents in Bryn Mawr because of problems caused by Villanova students attending the existing Smokey Joe's in Radnor Township." On May 7, 1999, Plaintiff filed a Notice of Appeal with the Township alleging that Duncan's revocation of the Use Permit was arbitrary, capricious, and contrary to the Township Ordinances, unsupported by competent evidence, constituted an error of law and that it violated Plaintiff's vested rights in the Use Permit. On July 1, 1999, Plaintiff's appeal was heard before the Zoning Hearing Board ("ZHB") with Defendants Ryan and Morris sitting.[8] Plaintiff presented evidence regarding his proposed use of the Property and particularly his proposed use

of the second floor renovation. Plaintiff argued that the only relevant inquiry for Township Ordinance purposes is the proposed use of the second floor renovation. Various opponents presented evidence, most of it having to do with the operation of Plaintiff's other establishment, Smokey Joe's in Wayne. By Memorandum and Order dated August 9, 1999, Defendant Ryan and Morris as members of the ZHB, denied Plaintiff's appeal finding that the use of the entire facility was a taproom and, thus, Plaintiff did not qualify to use municipal parking spaces. Plaintiff did not appeal the ZHB's decision to the Court of Common Pleas.

On October 8, 1999, Duncan wrote a Memorandum to the Township Manager in which he said the following:

> Staff has been informed that the sale of the Prime Minister Building has been completed. The property has been sold to an individual that proposes to open a Japanese Restaurant. The property was the subject of a zoning appeal by the same individuals that operated a bar & restaurant to the college age crowd.
>
> Since the 30 day appeal period for the zoning decision has expired and the property has transferred, it appears that the threat of another college bar in Bryn Mawr has been avoided.

After Plaintiff's Use Permit was denied, The Grog, which Plaintiff alleges was similarly situated, was issued a use permit entitling it to use municipal spaces to meet the parking requirements based a second floor addition. In the Change of Use Certificate issued to The Grog, the Zoning Officer stated "the parking spaces designated for this expanded use of the 2nd floor can only be granted if the principal use of the space is a restaurant. If the use

---

**8.** The Mortgage Holder on the Property agreed to stay the sheriff's sale until August

18, 1999, but informed Plaintiff that there would be no further stays.

of the 2nd floor after 5:00 p.m. is to expand the taproom use, this approval is voided and Zoning Hearing Board approval will be required."

On April 12, 2001, Plaintiff filed the Complaint in this action alleging a violation of 42 U.S.C. § 1983, civil conspiracy, and intentional interference with an actual contractual and business relationship. After the conclusion of discovery, Defendants filed a Motion for Summary Judgment which we now consider.

## DISCUSSION

### A. *Standard of Review*

In deciding a motion for summary judgment under Fed.R.Civ.P. 56(c), a court must determine "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Medical Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir.1999) (internal citation omitted). When making this determination, courts should view the facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). For its part, the non-moving party must, through affidavits, admissions, depositions, or other evidence, demonstrate that a genuine issue exists for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making its showing, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *id.* at 586, 106 S.Ct. 1348, and must produce more than a "mere scintilla of evidence in its favor" to withstand summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the non-moving party fails to create "sufficient dis-

agreement to require submission [of the evidence] to a jury," the moving party is entitled to judgment as a matter of law. *Liberty Lobby*, 477 U.S. at 251–52, 106 S.Ct. 2505.

### B. *Judicial Immunity for Defendants Ryan and Morris*

Defendants Ryan and Morris have been sued in their individual and official capacities for violations of 42 U.S.C. § 1983, conspiracy, and intentional interference with contractual and business relations. Defendants Ryan and Morris argue they are immune from suit under the doctrine of judicial immunity.

"It is a well-settled principle of law that judges are generally 'immune from a suit for money damages.'" *Figueroa v. Blackburn*, 208 F.3d 435, 440 (3d Cir.2000)(quoting *Mireles v. Waco*, 502 U.S. 9, 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991)(per curiam)); *see also Zapach v. Dismuke*, 134 F.Supp.2d 682, 696 (E.D.Pa.2001)(same)(citing *Stump v. Sparkman*, 435 U.S. 349, 357 n. 8, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)); *Feingold v. Hill*, 360 Pa.Super. 539, 521 A.2d 33, 36 (1987)("[T]he law in Pennsylvania is well established that judges are absolutely immune from liability for damages when performing judicial acts, even if their actions are in error or performed with malice, provided there is not a clear absence of all jurisdiction over the subject matter and person.") A suit can only be maintained against a judge for "non-judicial acts" and for actions "taken in the complete absence of all jurisdiction." *Figueroa*, 208 F.3d at 440.

Whether an act is judicial depends on "the 'nature' and 'function' of the act, not the 'act' itself." *Mireles v. Waco*, 502 U.S. 9, 13, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991)(quoting *Stump*, 435 U.S. at 362, 98 S.Ct. 1099, 55 L.Ed.2d

331). Courts look to two factors in making this determination: the nature of the act, i.e. whether the act is a measure normally performed by a judge, and the expectations of the parties, i.e. whether the parties dealt with the judge in his judicial capacity. *See id.* at 12, 112 S.Ct. 286, 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9.

*Zapach,* 134 F.Supp.2d at 696.

Our Court of Appeals has held that zoning boards who are ruling on a zoning permit for a particular piece of property are performing a "quasi-judicial function." *See Omnipoint Corp. v. Zoning Hearing Board of Pine Grove,* 181 F.3d 403, 409 (3d Cir.1999)(citing *Urbano v. Meneses,* 288 Pa.Super. 103, 431 A.2d 308, 311 (1981)). Judicial immunity is extended to those performing "quasi-judicial" functions. *See, e.g., Jodeco, Inc. v. Hann,* 674 F.Supp. 488, 497 (D.N.J.1987)(recognizing that "absolute [judicial] immunity has been extended to protect those nonjudicial officials whose activities are integrally related to the judicial process and involve the exercise of discretion comparable to that of a judge")(citing numerous cases supporting this proposition).

■ In this case, Defendants Ryan and Morris were sitting as members of the Zoning Hearing Board ("ZHB") to hear Plaintiff's appeal from a zoning decision made by Duncan, a Zoning Officer.[9] Plaintiff was represented by counsel at the ZHB hearing. Plaintiff put on a case-in-chief and had the opportunity to cross-examine his opponents. The ZHB took the sworn testimony of witnesses and ruled on objections from counsel. A review of the transcript from the hearing demonstrates it was judicial in nature. Further, the ZHB issued a written opinion outlining its decision and the decision was

appealable to the Court of Common Pleas for Montgomery County, Pennsylvania. Because Defendants Ryan and Morris were performing a quasi-judicial role as members of the ZHB hearing an appeal of a zoning decision, they will be granted judicial immunity and all of Plaintiff's claims against them in their individual capacities are dismissed with prejudice.

■ However, Defendants Ryan and Morris were also sued in their official capacities. "In a suit against a government official in his official capacity, 'the real party in interest ... is the governmental entity and not the named official....'" *Smith v. School District of Philadelphia,* 112 F.Supp.2d 417, 424–25 (E.D.Pa.2000)(quoting *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991)). In this case, Defendants Ryan and Morris were representatives of the ZHB, and the ZHB is not entitled to immunity. *See Schiazza v. Zoning Hearing Board of Fairview Township,* 168 F.Supp.2d 361, 374 (M.D.Pa.2001)(zoning board is "entitled to no immunity whatsoever"). Therefore, Defendants Ryan and Morris do not enjoy immunity for the claims against them in their official capacities as the ZHB is the real party in interest for those claims.

## C. Civil Conspiracy Claim

"To prove a civil conspiracy under Pennsylvania law, a plaintiff must show the following elements: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Bristol Township v. Independence Blue Cross,* No. CIV.A. 01–4323, 2001 WL 1231708, * 5 (E.D.Pa.

---

9. Hearings before a ZHB are governed by 53 P.S. § 10908.

Oct.11, 2001)(citing *SNA, Inc. v. Array,* 51 F.Supp.2d 554, 561 (E.D.Pa.1999)). "Proof of malice or an intent to injure is essential to the proof of a conspiracy." *Id.* (citing *Strickland v. University of Scranton,* 700 A.2d 979, 987–88 (Pa.Super.1997)); *see also Progress Federal Savings Bank. v. Lenders Association, Inc.,* No. CIV.A. 94–7425, 1995 WL 464320, * 5 (E.D.Pa. July 31, 1995). "An action will lie only where the sole purpose of the conspiracy is to cause harm to the party who claims to be injured." *Id.* (citing *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 412 A.2d 466, 472 (1979)). "Thus where the facts show that a person acted to advance his own business interests, those facts constitute justification and negate any alleged intent to injure." *Id.*

In this case, Plaintiff alleged that:

It is believed and therefore averred that from April, 1999 through August, 1999, the representatives of the Township, including the Zoning Officer, who is also Secretary for the Zoning Board, and the Zoning Board met and conspired to deprive the Plaintiff of the equal protection of the laws, thereby inflicting injury on the Plaintiff.

Plaintiff's Complaint at ¶ 59.

Plaintiff argues in response to the motion for summary judgment that the following constitutes evidence to support the conspiracy claim:

The facts on record show that Mr. Bloom, the Ward Commissioner, and Hank Wilson of the Bryn Mawr Civic Association had discussions with the Zoning Officer before and after the revocation of the Use Permit regarding Plaintiff; Mr. Bloom, as a Ward Commissioner, elects the Members of the

ZHB; contrary to the Township's policy, Mr. Bloom testified at the Plaintiff's appeal before the ZHB; the Township took a position against the Plaintiff at the appeal [10]; and the Defendants' actions were motivated by the Township's discontent for Smokey Joe's and college students.

*See* Plaintiff's Response to the Motion for Summary Judgment at pg. 31.

However, at Plaintiff's deposition, Defendants' counsel read the above quoted paragraph of the Complaint to Plaintiff and then asked Plaintiff whether he "had any specific knowledge that such meetings took place." Plaintiff replied that he did not have any specific knowledge that any meetings took place. *See* Patrick J. Ryan's Dep. Tr. at pg. 45, lines 6–22. Plaintiff was further asked which representatives he was referring to in paragraph 59 of his Complaint. Plaintiff responded that he was referring to Robert Duncan, the Zoning Officer, and to Charles Bloom, one of the commissioners. When asked again whether he had any specific knowledge that these individuals met and conspired, Plaintiff responded "No." *Id.* at pg. 46, lines 1–11.

Defendant Duncan admits that he spoke with Hank Wilson and Charles Bloom concerning Plaintiff and Plaintiff's connection with Smokey Joe's. *See* Duncan Dep. Tr. at pgs. 37–40. However, as Plaintiff has admitted, there is no evidence to demonstrate a conspiracy among these individuals. Since Plaintiff has not presented the Court with any evidence to demonstrate that these individuals acted with the purpose of doing an unlawful act or doing a lawful act by unlawful means or for an unlawful purpose, the Court grants summary judgment as to the conspiracy claim.

---

**10.** This allegation is not true. *See* Lower Merion ZHB Hearing Transcript for July 1, 1999.

*See, e.g., Bristol Township,* 2001 WL 1231708 at \*5.

### D. *Intentional Interference with Contractual Relations*

"The tort of interference with contract provides that one who intentionally and improperly interferes with the performance of a contract between another and a third person by causing the third person not to perform the contract is subject to liability to the other for the pecuniary loss resulting from the failure of the third person to perform the contract." *Schmidt, Long & Associates, Inc. v. Aetna U.S. Healthcare, Inc.,* No. CIV.A. 00–3683, 2001 WL 856946, \* 2 (E.D.Pa. July 26, 2001)(citing *Maier v. Maretti,* 448 Pa.Super. 276, 671 A.2d 701, 707 (1996)(citing Restatement (Second) of Torts § 766)). "To maintain an action for intentional interference with contractual relations, the plaintiff must establish: (1) the existence of a contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of a privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct." *Id.* (citing *Shiner v. Moriarty,* 706 A.2d 1228, 1238 (Pa.Super.1998) and *Kachmar v. SunGard Data Systems, Inc.,* 109 F.3d 173, 184 (3d Cir.1997)).

"Essential to recovery on the theory of tortious interference with contract is the existence of three parties; a tortfeasor who intentionally interferes with a contract between the plaintiff and a third person." *Maier,* 671 A.2d at 707; *see also Nova Telecom, Inc. v. Long Distance Management Systems, Inc.,* No. CIV.A. 00–2113, 2000 WL 1593994, \*9 (E.D.Pa. Oct.26, 2000)("[u]nder Pennsylvania law, one who intentionally and improperly interferes with the performance of a contract between another and a third person by causing the third person not to perform the contract is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract"); *Daniel Adams Associates, Inc. v. Rimbach Publishing, Inc.,* 360 Pa.Super. 72, 519 A.2d 997, 1000 (1987)("By definition, this tort necessarily involves three parties. The tortfeasor is one who intentionally and improperly interferes with a contract between the plaintiff and a third person.").

Defendants move for summary judgment as to Plaintiff's interference with contract claim arguing that Plaintiff has not presented any evidence to demonstrate that any of the Defendants intentionally interfered with Plaintiff's contract with Paul Flanigan. In response to the motion for summary judgment Plaintiff merely recites what was pled in his Complaint. Plaintiff does not point to any evidence in the record to indicate that any Defendant interfered with his contract. In the absence of any evidence to demonstrate intentional interference with Plaintiff's contract by any Defendant, the Court will grant summary judgment as to the interference with contract claim.

### E. *42 U.S.C. § 1983 Claims for Substantive Due Process and Equal Protection Violations*

#### 1. *Substantive Due Process*

"In order for a plaintiff to prevail on a substantive due process claim, he or she must prove that the governmental authority acted in such a way as to infringe a property interest encompassed by the Fourteenth Amendment." *John E. Long, Inc. v. The Borough of Ringwood,* 61 F.Supp.2d 273, 280 (D.N.J.1998)(citing *Sameric Corp., Inc. v. Philadelphia,* 142

F.3d 582, 590 (3d Cir.1998)(other citations omitted). "A violation of substantive due process rights is demonstrated if the government's actions were not rationally related to a legitimate state interest or were motivated by bias, bad faith, or improper motive." *Id.* (citing *Sameric,* 142 F.3d at 590)(other citations omitted)).

■ Defendants have conceded for purposes of this motion the Plaintiff has demonstrated a protected property interest. Further, the Court finds that Plaintiff has presented a genuine issue of material fact regarding whether the decision was arbitrary and capricious or made based on an improper motive. Thus, we deny Defendants' motion for summary judgment as to Plaintiff's substantive due process claims.

### 2. *Equal Protection Claim*

Plaintiff argues that Defendants violated his equal protection rights by applying the ordinances at issue in this case differently to him than to other similarly situated properties.

■ Plaintiff's equal protection claims are not entitled to heightened scrutiny. *See Taylor Investment, Ltd. v. Upper Darby Township,* 983 F.2d 1285, 1294 (3d Cir. 1993)(in "absence of a suspect class or fundamental right, plaintiffs' equal protection claim merits no heightened scrutiny")(internal citations omitted). Thus, for Plaintiff to prevail on his equal protection claim, he must demonstrate that the Defendants' actions were not "rationally related to a legitimate purpose." *Id.*

Plaintiff has presented sufficient evidence to demonstrate a genuine issue of material fact regarding whether the township ordinances at issue were applied dif-

ferently to at least one similarly situated establishment.[11] Thus, summary judgment is denied as to the equal protection claim.

### CONCLUSION

An appropriate Order follows.

### *ORDER*

AND NOW, this day of June, 2002, upon consideration of the Defendants' Motion for Summary Judgment and the responses thereto, it is hereby ORDERED that the Motion is GRANTED IN PART and DENIED IN PART as follows:

1.  Defendants' Robert S. Ryan and Michael J. Morris are granted immunity for all claims brought against them in their individual capacities;

2.  the Motion for Summary Judgment as to Plaintiff's state law claims for Conspiracy and Intentional Interference with Contractual and Business Relations is GRANTED as to all Defendants; and

3.  the Motion for Summary Judgment of Defendants' Lower Merion Township, Robert E. Duncan, Robert S. Ryan, in his official capacity as a representative of the Zoning Hearing Board, and Michael J. Morris, in his official capacity as a representative of the Zoning Hearing Board, as to the 42 U.S.C. § 1983 claims for violations of substantive due process and equal protection is DENIED.

---

**11.** In their pleadings, Defendants have not challenged whether the entities suggested by Plaintiff are, in fact, similarly situated. For purposes of this motion, the Court will presume that they are similarly situated. However, we will consider further evidence on this point at the appropriate time at trial.