**ASSOCIATES IN OBSTETRICS & GYNECOLOGY, on behalf of itself and its patients et al., Plaintiffs,**

v.

**UPPER MERION TOWNSHIP et al., Defendants.**

**Civil Action No. 03–2313.**

United States District Court, E.D. Pennsylvania.

July 16, 2003.

Nancy C. Demis, Gallagher, Schoenfeld, Surkin & Chupein, Media, PA, Julia E. Gabis, Julia E. Gabis & Associates, Conshohocken, PA, for PlaintiffS.

Charles C. Sweedler, David J. MacMain, Danielle M. White, Montgomery, McCracken, Walker & Rhoads, LLP, Philadelphia, PA, for Defendants.

## MEMORANDUM

BAYLSON, District Judge.

The principal issue for decision is whether the entry of a state court injunction against one of the plaintiffs preventing operation of its business as an abortion provider warrants dismissal for failure to state a federal constitutional claim, declination of jurisdiction, or abstention, of the provider's civil rights claims in this Court for damages, and injunctive relief conflicting with the state court's injunction.

Plaintiff Associates in Obstetrics & Gynecology ("Associates"), a provider of abortion services in King of Prussia Pennsylvania, on behalf of itself and its patients, and Stephen C. Brigham, M.D., a licensed physician and owner of Associates (collectively "Plaintiffs"), bring this Complaint for violation of their rights guaranteed under the United States Constitution and pendent state claims against defendants Upper Merion Township ("the Township"); Township Board of Supervisors; borough supervisors Barbara S. Frailey, Dan Rooney, Fiorindo A. Vagnozzi, Ralph P. Volpe, Anthony J. Volpi; Township Zoning Hearing Board ("the Board"); zoning hearing board members Edward McBride, Michael Fiore, William Whitmore; Ronald G. Wagenmann, Township Manager; Mark A. Zadroga, Township Zoning Officer; and Does I–X, individuals residing in this judicial district (collectively "Defendants").

In August 2001, Defendant Zadroga issued a cease and desist order to Associates that it was in violation of an Upper Merion Township Zoning Code based on his determination that Associates was operating as a clinic and, therefore, had to be situated on a lot of at least three acres, which it was not.

The Township's cease and desist order sparked a series of enforcement actions by the Township to close Associates, which led to four still-pending legal proceedings in Pennsylvania state court including the issuance of a preliminary injunction against Associates. Defendants moved to dismiss Plaintiffs' Complaint. Because of the related state court litigation, this Court directed the parties to file supplemental briefs stating their respective positions on whether the *Rooker–Feldman* doctrine [1] deprives this Court of subject matter jurisdiction. Plaintiffs filed a brief outlining their position that this Court has jurisdiction, and Defendants filed a Supplemental Memorandum in support of their previously filed Motion to Dismiss, claiming that the *Rooker–Feldman* doctrine prevents this Court from exercising subject matter jurisdiction.

Oral argument was held on July 9, 2003. For the reasons that follow, the Court finds that the *Rooker–Feldman* doctrine does not deprive the Court of subject matter jurisdiction. Defendants' Motion to Dismiss also requests abstention and as-

---

**1.** Under 28 U.S.C. § 1257, only the United States Supreme Court has the power to overturn judgments of state courts, a principle derived from the supremacy clause of the Constitution. Lower federal courts lack this power, and this principle is usually referred to as the *Rooker–Feldman* doctrine, which gets its name from two Supreme Court cases: *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). *See infra* Part II.A for further discussion of the *Rooker–Feldman* doctrine.

serts that Plaintiffs' allegations are legally insufficient under the federal civil rights laws and state law claims. Defendants' Motion will be granted in part and denied in part. On the key issue of abstention, this Court will not abstain as to Plaintiffs' damage claims, and will defer decision on abstention as to injunctive relief, pending the evidence to be introduced at the hearing on Plaintiffs' Motion for Preliminary Injunction on July 28, 2003.

## I. Background and Procedural History

The following facts are taken from Plaintiffs' Complaint, and the record of state administrative and judicial proceedings, and are construed in the light most favorable to Plaintiffs.[2]

In April 2001, Associates began operating at 677 West DeKalb Pike, Suite 301, in King of Prussia, Pennsylvania, where it provided obstetric and gynecological services including family planning, testing and treatment for sexually transmitted diseases, and abortion services. (Pls.' Compl. ¶ 14). Associates asserts it is a unique provider of abortion services because it advertises in the local telephone directory, and its abortion services are targeted toward women who do not have a doctor-patient relationship with a medical practice and to women who seek less expensive abortion services than those provided by

hospitals and many physicians. *Id.* ¶¶ 15, 17.

In early August 2001, anti-abortion protesters began picketing around the subject property, and on August 15, 2001, Defendant Zadroga, the township zoning officer, appeared at the property claiming he was there to conduct an inspection of the premises and its use. *Id.* ¶¶ 23–24. Plaintiffs allege that the Doe Defendants approached employees, agents, and representatives of Upper Merion Township, including the individually named Defendants, to object to Plaintiffs' use of the property for the purpose of hindering and impeding Plaintiffs' patients and prospective patients' lawful procurement of abortion services. *Id.* ¶ 25. Plaintiffs further allege that all named Defendants, in their individual and official capacities, conspired with each other to engage in a pattern of harassment, selective enforcement, and procedural abuses against Associates, and that in furtherance of this conspiracy, Defendants directed the township zoning officer to conduct an inspection of Associates' office for the purpose of finding a basis to force it to cease operations. *Id.* ¶ 28.

On August 16, 2001, the township zoning officer issued a cease and desist order, finding that Associates was operating a medical clinic for the treatment of humans on a lot less than three acres in area in

**2.** When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). The Court must accept as true all well-pled allegations in the complaint and view them in the light most favorable to the plaintiff. *Angelastro v. Prudential–Bache Sec., Inc.,* 764 F.2d 939, 944 (3d Cir.1985). A Rule 12(b)(6) motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff. *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988).

Although documents outside the pleadings have been presented to the Court, these documents are all official records related to the proceedings before the Zoning Hearing Board and state courts. The parties agree that the instant Motion shall be treated as a motion to dismiss under FED.R.CIV.P. 12(b)(6) and not converted to a motion for summary judgment under FED.R.CIV.P. 56. *See Beverly Enterprises, Inc. v. Trump,* 182 F.3d 183, 190 n. 3 (3d Cir.1999) (citing *Pension Benefit Guaranty Corp. v. White Consol. Industries, Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993)).

violation of Article XVIII § 165–97 of the Upper Merion Township Code ("the Code")[3] and that Associates did not secure a use and occupancy permit before it opened for business. (Pls.' Supplemental Br., Ex. 1).

The issuance of the cease and desist order precipitated the following four pending legal proceedings in state court, and ultimately the filing of the instant Complaint.

## A. The Cease and Desist Order

Associates appealed the issuance of the cease and desist order issued by Mr. Zadroga, as the Township zoning officer, to the Board and attempted to raise the claim of selective enforcement of the Code at the public hearings, but the Township objected to all questions related to that claim, and those objections were sustained by the Board. (*See* Pls.' Supplemental Br., Ex. 2).

On June 5, 2002, the Board denied Associates' appeal, and issued a written opinion stating that "[t]he fact that the medical treatment provided by Appellant is abortion has no bearing on the Board's decision. What is determinative is that the primary purpose of the facility is for medical treatment of humans—a use that the Upper Merion Township zoning ordinance distinguishes from the general category of 'professional offices.'" *Id.* Ex. 3 at 19.

The Board did not address Associates' claim of selective enforcement of the Code.

Associates appealed this decision to the Montgomery County Court of Common Pleas, No. 02–10780, which, acting as an appellate court, took no evidence and reviewed the Board's decision for abuse of discretion and errors of law. *Id.* Ex. 4. In its appeal, Associates did not raise the selective enforcement issue, because of the Board's statement that its decision was not based on the fact that Associates provides abortion services. (Pls.' Supplemental Br. at 2).[4] On December 20, 2002, the court affirmed the Board's decision, and on March 13, 2003, a two-judge panel of the court issued a written opinion. *Id.* Ex. 4.

In their opinion, Judges Thomas M. Del Ricci and Arthur R. Tilson concluded that although the terms "office," "clinic," and "professional" are not defined in the Code, state law required that they be given their common meanings, and therefore the Board did not err because the "use provided by [Associates] is that of a clinic, not just because it advertises as such, but also because it maintains specialized equipment, a transfer agreement, and a recovery room." *Id.* at 7. The court also found that although Associates' "use may fall within the more general category of professional use, it also falls within the more specific category of medical clinic for the treatment of humans, resulting in [Associ-

3. Section 165–97 provides in part:
A building may be erected, altered or used and a lot may be used or occupied for any of the following uses and no other:
A. Any of the following uses:
 (1) On lots of the minimum area specified in § 165–99A(1) herein [20,000 square feet]:
 (a) Offices for the following uses: administrative, professional, service, sales and commercial
 . . .
 (3) On lots of the minimum area specified in § 165–99A(3) herein [3 acres]:
 . . .

 (c) Medical and dental clinic for treatment of humans.
 Plaintiffs' allegation that the categorization of Associates business as a "clinic" is arbitrary is discussed *infra* Part IV.A.

4. Plaintiffs assert that not raising selective enforcement on the first appeal did not waive their federal claims, and was the only occasion on which they did not assert selective enforcement in the state administrative and judicial proceedings. The impact of this on the *Rooker–Feldman* and abstention issues is discussed *infra*.

ates] being in violation of the minimum three-acre requirement." *Id.* at 9. The court further found that as a tenant without authorization to exercise the rights of the landowner, Associates lacked standing to challenge the validity of the ordinance; and that Associates was not a "person aggrieved" because its use was not a permitted use or development. The Court further ruled that Associates' substantive challenge[5] to the ordinance was not properly raised before the Board because Associates did not make a written request that the Board hear its substantive challenge, as required by state law; and that in addition to failing to raise its claim that the Board was impermissibly interfering with the state's right to regulate abortion in violation of the Abortion Control Act, 18 Pa. Cons.Stat. Ann. §§ 3201 *et seq.* (2002), "nothing in the Abortion Control Act indicates that the [Code] does not apply or that it preempts the intent of the legislature in adopting the [Code]." *Id.* at 10–13. Finally, the court found that Associates "had ample notice and opportunity to present evidence and argument." *Id.* at 14.

Associates has appealed this decision to the Commonwealth Court. (Pls.' Supplemental Br. at 2).

### B. The Enforcement Notice

On June 11, 2002, the Township issued an enforcement notice to Associates, requiring it to immediately cease its operations. (Pls.' Supplemental Br., Ex. 6). Associates appealed the enforcement notice to the Board. Associates again attempted to raise its selective enforcement claim in public hearings, but the Township again objected, and those objections were sustained by the Board. *Id.* Ex. 7. Counsel for the Township specifically instructed the township zoning officer not to answer any questions related to selective enforcement because "it may be prejudicial to the township in any future litigation." *Id.* Ex. 7 at 47.

On October 10, 2002, the Board issued another written opinion denying Associates' appeal of the enforcement notice, finding that the Township's failure to comply with a technical notice requirement did not prejudice Associates. *Id.* Ex. 8. The opinion did not address Associates' claim of selective enforcement. *Id.* Associates appealed this decision to the Montgomery County Court of Common Pleas, claiming that the Board's decision was

> arbitrary, capricious, an abuse of discretion and contrary to law in that (a) the Zoning Hearing Board improperly refused to permit Associates to introduce testimony that: 1) Upper Merion Township had not lawfully initiated the enforcement proceedings; and 2) Upper Merion Township was enforcing the June 11th Decision arbitrarily, capriciously and in violation of Associates' due process and equal protection rights under the MPC [Municipalities Planning Code] and the U.S. Constitution.

*Id.* Ex. 9 at 4–5.

Associates' appeal of the Board's decision is pending before Judge Albert R. Subers, to whom all matters relating to the zoning challenges have been assigned. (Pls.' Supplemental Br. at 3).

### C. Township's Civil Complaint

After the Board upheld the enforcement notice, the Township sought criminal fines

---

**5.** It is not altogether clear what the state court opinion meant by the use of the words "substantive challenge," although the discussion of it is included under a heading which reads, "Part II–The AWS [Associates] Challenges on Constitutional Grounds Fail." Assuming but not deciding that the phrase "substantive challenge" includes the constitutional claim of selective enforcement, the state court opinion implies that the issue was raised on appeal, but it does not deal with the issue on the merits.

against Associates, and upon finding that criminal penalties were not authorized, sought civil fines. *Id.* at 3–4. The Township filed a civil complaint against Associates in February 2003 in the Montgomery County Court of Common Pleas to enforce a civil judgment imposed by a state district justice. *Id.* at 4. Associates responded by filing an answer and new matter alleging that the Township is selectively enforcing the Code against Associates. (Pls.' Supplemental Br., Ex. 10). The Township filed an answer to the new matter, and it is currently pending before Judge Subers. *Id.* Ex. 11.

### D. Township's Complaint in Equity

On January 10, 2003, the Township filed a complaint in equity with a petition for a preliminary injunction in the Montgomery County Court of Common Pleas. In response, Associates filed an answer, new matter, and counterclaim, alleging that the Township was engaging in selective enforcement of the Code solely because Associates provides abortions. *Id.* Ex. 12. at 5. The Township filed preliminary objections to Associates' new matter and counterclaim, and Associates filed a response. *Id.* Exs. 13–14.

On February 14, 2003, Judge Subers heard argument on the related zoning matters, including the Township's complaint in equity and preliminary objections, but an evidentiary hearing was not conducted. At oral argument, Associates requested that the court take testimony on its claim of selective enforcement. *Id.* Ex. 15 at 29, 35. No testimony was taken, but Associates' counsel argued that the Township was not entitled to a preliminary injunction because it was selectively enforcing the Code against Associates. (Defs.' Supplemental Br., Ex. B. at 30–37, 49, 59–67). The Township argued that Associates was barred from raising the selective enforcement claim because of collateral estoppel or waiver, and Associates' counsel insisted

that the "record will show that I raised this argument in front of every forum in which I had the opportunity." *Id.* at 33. Associates' counsel urged the court to read the briefs because they contained evidence that the selective enforcement claim had been raised and not waived. *Id.* at 37, 40.

On March 11, 2003, Judge Subers issued an order temporarily enjoining Associates from maintaining and operating its medical clinic and mandating that it immediately comply with the cease and desist order. (Pls.' Supplemental Br., Ex. 16). The order did not address the Township's preliminary objections or the merits of Associates' claim of selective enforcement. *Id.* On April 22, 2003, Judge Subers issued a written opinion in which he found the following:

> The fact of the zoning violation was adjudicated by this Court in Case No. 02–10780 [referring to the opinion of Judges DelRicci and Tilson affirming the cease and desist order]. That decision has not been reversed on appeal. Associates asserted two defenses to the issuance of an injunction, both of which are insufficient.

> First, Associates contended that the Township's enforcement notice did not comply with the provisions of § 616.1(c) of the Municipalities Planning Code, 53 P.S. § 10616.1(c). That sub-section states the contents of an enforcement notice. Associates contends the notice did not comply with sub-sections (5) and (6) because it did not state the prescribed time during which an appeal must be filed to the Zoning Board, and by not stating that the failure to comply with the notice within the specified time constitutes a violation of the Code, and did not describe the possible sanctions. Inasmuch as an appeal was filed, and Associates had been sanctioned in the past, it was aware of the facts which

would have been contained in a correct notice.

*Id.* Ex. 17 at 3–4.

Regarding Associates' selective enforcement claim, Judge Subers wrote the following:

> Associates' second defense was selective enforcement of the zoning code. That issue was presented to the Zoning Hearing Board. While there was some dispute at argument regarding the basis of this Court's ruling in Case No. 02–10780 and no opinion had been written at that time, the defense was clearly one to be heard in that case; and it had been rejected. It may be that it was rejected on its merits; or for failure to raise it before the Zoning Board; or for failure to raise it in the Notice of Appeal to this Court. Whatever the case, we may not overrule the decision of other judges of coordinate jurisdiction regarding the same issue, unless the record is materially different.... No difference was described on the record of this hearing.

*Id.* at 4–5.

Associates appealed this ruling to the Commonwealth Court, asserting that the trial court abused its discretion in failing to hold an evidentiary hearing before issuing a preliminary injunction and that the trial court committed an error of law in summarily rejecting Associates' defenses and counterclaims. *Id.* Ex. 18. That appeal is pending. Associates' application for a stay of the preliminary injunction pending appeal was denied by Judge Subers, the Commonwealth Court, and the Pennsylvania Supreme Court. *Id.* at 2; Ex. 19; Defs.' Supplemental Br., Ex. F.

### E. Federal Complaint

On April 14, 2003, (after Judge Subers had issued a temporary restraining order but prior to his issuance of the preliminary injunction), Plaintiffs filed the instant Complaint alleging broadly that Associates has been deprived of equal protection and substantive and procedural due process of law in Count I. Count II asserts rights of association and privacy under the First and Fourteenth Amendments. Count III charges that the individual Defendants conspired to violate the right to an abortion secured to Associates' patients by due process. Count IV claims that Upper Merion deprived Associates of its property rights in violation of procedural and substantive due process; Count V [6] claims impairment of contracts in violation of U.S. CONST. art 1, § 10 and PA. CONST. art. 1, § 17; Count VI alleges malicious prosecution/use of process; Count VII claims wrongful use of civil proceedings in violation of 42 PA. CONS.STAT. ANN. § 8351; Count VIII charges tortious interference with contractual relationships; Count IX alleges civil conspiracy against individual Defendants; Count X claims tortious interference with prospective business relationships; and Count XII [7] charges *respondeat superior* liability against Upper Merion Township. (Pls.' Compl. ¶¶ 123–56).

### II. Discussion of *Rooker–Feldman* Doctrine

Defendants assert that the *Rooker–Feldman* doctrine deprives this Court of subject matter jurisdiction because this Court may not act in an appellate capacity nor can it be asked to reverse the decisions of the Montgomery County Court of Common Pleas. (Defs.' Supplemental Br.

---

6. At oral argument, Plaintiffs withdrew Count V of their Complaint. Therefore, Defendants' Motion to Dismiss Count V will be denied as moot.

7. Plaintiffs apparently misnumbered Count XII because the Complaint does not contain a Count XI.

at 3). Defendants claim that the *Rooker–Feldman* doctrine applies here because Plaintiffs' federal claims were decided by the Montgomery County Court of Common Pleas. *Id.* Defendants further argue that even if this court were to find that Plaintiffs' federal claims were not "actually litigated" in state court, they are "inextricably intertwined" with the Court of Common Pleas' two decisions. *Id.* at 3–6.

Plaintiffs claim that the *Rooker–Feldman* doctrine does not apply in the instant case because Plaintiffs' claims of unconstitutional selective enforcement of the Code have never been actually litigated in any state court and are not inextricably intertwined with any state court litigation. (Pls.' Supplemental Br. at 5). Plaintiffs assert that this Court's adjudication of their claims would not require a finding that any state court judgment was wrong. *Id.* at 5–6.

### A. *Rooker–Feldman* Doctrine

The *Rooker–Feldman* doctrine is derived from 28 U.S.C. § 1257[8] and the understanding that "a United States District Court has no authority to review judgments of a state court in judicial proceedings. Review of such judgments may be had only in [the United States Supreme] Court." *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).[9] The doctrine precludes lower federal courts from exercising jurisdiction over claims that were actually litigated in state court or are "inextricably intertwined" with a state court adjudication. *Parkview Associates Partnership v. City of Lebanon,* 225 F.3d 321, 325 (3d Cir.2000).[10] For *Rooker–Feldman* purposes, a federal claim and a state claim are inextricably intertwined, where, if the federal claim succeeds, the state court judgment would be effectively voided. *Gulla v. North Strabane Township,* 146 F.3d 168, 171 (3d Cir.1998).

For purposes of the instant case, the Third Circuit's opinions in two zoning cases, *Parkview* and *Desi's Pizza, Inc. v. City of Wilkes–Barre,* 321 F.3d 411 (3d Cir.2003) are especially instructive for illustrating why the application of the *Rooker–Feldman* doctrine is inappropriate in the instant case.

In *Parkview,* the plaintiffs, a personal care facility and individuals associated with it, appealed from the dismissal of their claim against a city and zoning hearing board challenging the denial of the plaintiffs' zoning permit as violating federal and state anti-discrimination statutes. 225 F.3d at 322. The plaintiffs' zoning permit to convert a residential nursing home into a personal care facility was denied after the zoning board decided that the plaintiffs' proposed use was non-conforming. *Id.* The plaintiffs appealed the zoning board's decision to the Court of Common Pleas on numerous grounds including age discrimination in violation of state and federal anti-discrimination statutes. *Id.* at 322–23. That court affirmed the zoning

---

**8.** 28 U.S.C. § 1257 states in relevant part:

[F]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of it being repugnant to the Constitution, treaties, or laws of the United States.

**9.** This Court recently reviewed the leading Third Circuit cases addressing the *Rooker–Feldman* doctrine in *Bass v. Butler,* 224 F.Supp.2d 950, 955–56 (E.D.Pa.2002).

**10.** The *Rooker–Feldman* doctrine has been extended to decisions of lower state courts and does not apply exclusively to state courts of last resort. *Port Auth. Police Benevolent Ass'n, Inc. v. Port. Auth.,* 973 F.2d 169, 178 (3d Cir.1992).

board's decision without reference to the plaintiffs' age discrimination allegations. *Id.* at 323. The Commonwealth Court affirmed the lower court's decision, and the Pennsylvania Supreme Court denied allocatur. *Id.* During this period, the plaintiffs' application for a second permit for another proposed personal care facility also was denied, which denial was affirmed by the Court of Common Pleas and appealed to the Commonwealth Court, although the plaintiffs subsequently withdrew that appeal. *Id.*

The plaintiffs then sued in federal district court alleging that the zoning board's denials of their permits were acts of discrimination based on disability under federal and state law. *Id.* Although the plaintiffs had not raised disability-based discrimination claims in their state actions, the district court held that these claims were barred under *Rooker–Feldman.* On appeal, the Third Circuit held that the state courts' opinions revealed that the zoning board's decisions were reviewed solely in their appellate capacity without any new evidence and that plaintiffs' disability-based discrimination claims were not actually litigated in state court. *Id.* at 325–26. Addressing the defendants' argument that *Rooker–Feldman* would apply not only to claims raised in the state courts but also to claims which could have been raised, the Court held that "[b]ecause the state courts did not consider or rule upon Parkview's discrimination claim, the only basis to hold *Rooker–Feldman* applicable would be if Parkview's challenge to the Board's decisions were inextricably intertwined with the state court's appellate review of those decisions. It is not." *Id.* at 327. The plaintiffs' federal claims were not inextricably intertwined with the previous state adjudication because the state courts strictly reviewed the board's zoning permit denial for abuse of discretion or errors of law, and the district court's adjudication of the plain-

tiffs' discrimination claims would not require a finding that the state courts were wrong. *Id.* at 326.

In *Desi's Pizza,* the plaintiffs owned a restaurant and bar which had been in business since 1989. 321 F.3d at 415. Most of Desi's customers were white until March of 2000, when another restaurant and bar with predominantly African–American and Latino customers closed, and many of its former patrons became regular customers at Desi's. *Id.* Following the change in the racial and ethnic composition of Desi's customers, people living in the area near Desi's, which was predominantly white, began to complain of increased crime, noise, and other disturbances. *Id.* In response to these grievances, the defendant city and some of its officials embarked upon a campaign to shut down Desi's, which consisted of, among other things, seeking an order from state court shutting down Desi's as a public nuisance under state law. *Id.* at 415–16. Although the defendants claimed their actions were motivated by criminal activity around Desi's, they did not take any action against two other city bars where violent altercations occurred in 2000 and 2001. *Id.* at 416.

The Luzerne County Court of Common Pleas granted a preliminary injunction closing Desi's, and then considered the parties' pleadings and arguments. *Id.* The plaintiffs stated that they wished to reserve the right to have their constitutional claims under 42 U.S.C. §§ 1981, 1982, 1983, and 1985 and their Fourteenth Amendment equal protection and due process claims adjudicated in federal district court and were describing these claims to the state court only so that it could construe the state law issues in light of the federal claims. *Id.* The court then entered an order enjoining the operation of Desi's for one year, finding that extensive criminal activity had taken place; that there

was a clear connection between Desi's and the criminal activity; that the plaintiff owner was aware of the criminal activity and took little or no action to prevent it; that Desi's was a public nuisance under state law; and that the defendants would have abdicated their responsibilities if they had not attempted to shut down Desi's. *Id.* at 416–17. The court made no reference to the plaintiffs' federal claims in its opinion. *Id.* at 417.

The plaintiffs filed suit in federal district court alleging that the defendants singled out the plaintiffs' establishments, treating them in a far harsher manner than other businesses in violation of the plaintiffs' equal protection rights; that plaintiffs were retaliated against for welcoming minority patrons at their establishments as part of the city's custom and policy to drive out minority patrons; and that the defendants violated the plaintiffs' substantive and procedural due process rights. *Id.* The district court found that each issue raised by the plaintiffs was "intertwined with the issues in the state court action" and dismissed the complaint. *Id.* at 418. In reversing and remanding the case to the district court, the Third Circuit held that the plaintiffs had not actually litigated their federal claims in state court because they only reserved the right to file their federal claims, and the state court's opinion contained no discussion of federal law. *Id.* at 420–21. The Court also found that the federal equal protection claims under §§ 1981 and 1982 were not inextricably intertwined with the state court's decision because the state court's finding that Desi's was a common nuisance meant only that it operated in violation of the state liquor and criminal code, and the plaintiffs' federal claims could proceed on the theory that although there were other establishments in the city that constituted common nuisances under state law, the defendants targeted Desi's with the intent to drive

certain ethnic groups out of the city. *Id.* at 424–25.

The Court further found that the district court erred when it held that the plaintiffs' substantive due process claim was inextricably intertwined with the state court's decision because the state court held that the plaintiffs had no right under state law to operate Desi's during the period of the injunction, and if the district court found that the plaintiffs' rights were violated, that would necessarily mean the state court was wrong. *Id.* at 427. The Third Circuit held that the presence or absence of property rights under state law is not dispositive of the issue of whether a person has a property interest protected by substantive due process. *Id.* Finally, the Court remanded the plaintiffs' procedural due process claim to the district court to allow the plaintiffs to articulate more clearly that claim. *Id.* at 426.

We will now review the state court holdings to determine whether *Parkview* and *Desi's Pizza* control.

**B. State Court Holdings**

"In determining whether a federal decision favorable to the plaintiffs would mean that a prior state-court judgment was wrong, it is necessary to identify the pillars on which the state-court judgment rests. To do this, we consider the questions of state law that the state court was obligated to reach in order to render its decision." *Id.* at 421.

**1. Plaintiffs' Claims Not Actually Litigated in State Court**

■ The first analytical step in determining if the *Rooker–Feldman* doctrine applies is to consider whether Plaintiffs' federal claims were actually litigated in state court. *Id.* at 420 (quoting *Parkview*, 225 F.3d at 325).

As explained in Part I *supra*, at hearings before the Board on its appeal of the

cease and desist order, Associates first sought to raise its claim that the Township was selectively enforcing the Code against it because it provided abortion services. During those hearings, Associates' efforts to raise this claim were objected to by the Township, the objections were sustained by the Board, and Associates could not develop an evidentiary record.

Associates appealed the Board's denial of its appeal to the Court of Common Pleas, but admits it did not specifically raise selective enforcement in its appeal. However, at page 9 of the court's opinion dated March 13, 2003, appears a heading entitled "The AWS [Associates] Challenges on Constitutional Grounds Fail" and in the discussion, the court holds that Associates did not have standing and did not properly raise a "substantive challenge" before the Zoning Hearing Board, which presumably subsumes the constitutional challenge. (Pls.' Supplemental Br., Ex. 4 at 9). The court, therefore, reviewed the Board's decision only for abuse of discretion and errors of law. The court affirmed the Board's decision, finding that the Board had neither abused its discretion nor committed an error of law in determining that Associates' use of its premises violated the Code because the Code requires a clinic to be on a property consisting of at least three acres. Associates has appealed this decision. Associates asserts it did not raise the selective enforcement issue in its appeal to the Court of Common Pleas or the Commonwealth Court because the Board's decision was not based on the fact that Associates provides abortion services.

In its subsequent appeal of the second proceeding, the enforcement order, Associates again sought to raise the selective enforcement issue before the Board but was not permitted to introduce any evidence on this claim. Associates has briefed this issue in its notice of appeal and has requested an evidentiary hearing before the Montgomery County Court of Common Pleas.

Associates tried for a third time to raise the selective enforcement issue in connection with its defense and new matter in response to the Township's complaint to pursue a civil judgment entered by a district justice. This action also is pending before the Montgomery Court of Common Pleas.

Finally, Associates attempted to raise its selective enforcement claim in defense to the Township's petition for a preliminary injunction to enforce the enforcement order against Associates. Associates filed an answer, new matter, and counterclaim raising selective enforcement, among other claims. The court did not address the selective enforcement claim. *See* excerpt quoted *supra* Part I.D.

It is clear from the *Desi's Pizza* holding that Associates' selective enforcement claim has not been actually litigated in state court, and no state court has ruled on the merits of the claim. As the Third Circuit wrote in *Parkview*, which is directly applicable to the instant case:

> [T]he state courts' opinions reveal that the courts reviewed the Board's decisions solely in their appellate capacity, taking no new evidence, and affirmed the Board's decisions as supported by substantial evidence in the record without deciding whether the decisions violated federal or state anti-discrimination laws.

225 F.3d at 325–26.[11]

We are unwilling at this point to characterize the Plaintiffs' failure to specifically

---

11. The first decision by the state court disposed of the appeal in exactly this manner, and the second decision did not address the federal claim, finding that it had been rejected in the court's first decision.

raise the selective enforcement issue in its first appeal from the Zoning Hearing Board's cease and desist order to the Court of Common Pleas as a waiver of this issue. It is clear that Plaintiffs attempted to raise the issue at the hearing before the Zoning Hearing Board. Even assuming that Plaintiffs had not strictly complied with the Zoning Hearing Board regulations, or did not, under state procedural rules, have standing to assert the issue at that time (as held by the Court of Common Pleas Opinion in No. 02–10780, dated March 13, 2003), these state procedural rules cannot be effective to bar Plaintiffs, for all time, from asserting their constitutional rights in state court. However, Judge Subers specifically refused to deal with the issue because of the consideration given in the opinion of his colleagues dated March 13, 2003, which was clearly not on the merits of the issue.

### 2. Plaintiffs' Claims Not Inextricably Intertwined with State Court Judgments

■ Having found that Plaintiffs' claims were not actually litigated in state court, it must next be determined if their claims are inextricably intertwined with the previous state court adjudications. *Id.* at 326.

In its two written opinions, the Montgomery County Court of Common Pleas only has determined that the Board did not abuse its discretion or commit an error of law in deciding that Associates' use of its premises violated the Code because the Code requires a clinic to be located on property consisting of at least three acres; that the Township was entitled to a preliminary injunction in support of the enforcement order because the zoning violation had been adjudicated; that the Township's failure to comply with a technical notice requirement in its enforcement order did not prejudice Associates; and that Associates' selective enforcement argument could not be considered.

It is clear that the Plaintiffs' selective enforcement claim is not inextricably intertwined with either of the state court adjudications. A decision in Plaintiffs' favor on their federal constitutional claims would not mean that the state court erred in its above findings. Again, the Third Circuit's opinion in *Parkview* is directly applicable to the instant case:

> [T]he state court proceedings in this case were limited to appellate, on-the-record review of whether the Zoning Hearing Board abused its discretion or committed an error of law in determining that Parkview's proposal would change the essential character of the prior use and would increase nonconformity. In order to decide Parkview's claims alleging that the Board based its decisions on considerations prohibited by state and federal anti-discrimination statutes, the District Court here would not have to review the state court's determinations that the Board's decisions were supported by substantial evidence in the record. In other words, adjudication by a federal court of Parkview's discrimination claims would not require the federal court to determine that the state court was wrong.

225 F.3d at 326.

### C. Conclusion—The *Rooker–Feldman* Doctrine Does Not Apply

As the Third Circuit noted in *Parkview*, there is "overwhelming precedent in this court construing the *Rooker–Feldman* doctrine narrowly." 225 F.3d at 326. In the instant case, a narrow construction of the doctrine leads to the clear conclusion that Plaintiffs' federal claims were neither actually litigated nor are they inextricably intertwined with the state court proceedings. *Parkview* and *Desi's Pizza* control. Therefore, the *Rooker–Feldman* doctrine does not deprive this Court of subject matter jurisdiction.

## III. Abstention

As part of their Motion to Dismiss, Defendants request this Court to abstain from ruling on Plaintiffs' claims in view of the pending state court litigation.[12] As a general rule, federal courts are bound to adjudicate all cases and controversies that are properly before them, and they cannot abdicate their authority or duty in any case in favor of another jurisdiction. *New Orleans Pub. Serv., Inc. v. City of New Orleans*, 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989). Abstention is a judicially-created doctrine under which a federal court will decline to exercise its jurisdiction so that a state court or state agency will have an opportunity to decide the matters at issue. *Heritage Farms, Inc. v. Solebury Township*, 671 F.2d 743 (3d Cir.1982), *cert. denied*, 456 U.S. 990, 102 S.Ct. 2270, 73 L.Ed.2d 1285 (1982). As abstention is the exception and not the rule, abstention from the exercise of federal jurisdiction is appropriate only in certain limited circumstances. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

The Supreme Court has articulated four primary types of abstention. Because Defendants rely on only two types, either the *Younger* or *Pullman* abstention doctrines, the Court will focus on these two doctrines.

### A. *Younger* Doctrine

■ Under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), abstention is appropriate when federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings, state nuisance proceedings antecedent to criminal proceedings, or collection of state taxes. *Colorado River*, 424 U.S. at 816, 96 S.Ct. 1236. The *Younger* doctrine has

been expanded to apply to cases involving private parties. *Grimm v. Borough of Norristown*, 226 F.Supp.2d 606, 626 (E.D.Pa.2002) (citing *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987)). *Younger* abstention arose primarily from the notion of comity and reflects "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Gwynedd Props., Inc. v. Lower Gwynedd Township*, 970 F.2d 1195, 1200 (3d Cir.1992) (quoting *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)).

The Third Circuit precedent is clear that the following three prongs must be met in order for a federal court to abstain under the *Younger* doctrine: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. *Middlesex*, 457 U.S. at 432, 102 S.Ct. 2515. Even if the necessary three predicates exist, however, *Younger* abstention is not appropriate if the federal plaintiff can establish that the state proceedings are being undertaken in bad faith, or if there are other extraordinary circumstances, such as where the state proceedings are based on a flagrantly unconstitutional statute. *Id.* at 435, 102 S.Ct. 2515. *See generally*, for recent repetition of these requirements, *Anthony v. Council*, 316 F.3d 412 (3d Cir.2003).

"As a threshold condition to the above requirements, *Younger* applies only when the relief the plaintiff seeks in federal court would interfere with the ongoing state judicial proceeding." *Grimm*, 226 F.Supp.2d at 626 (citations omitted). This is because "where federal proceedings par-

---

12. Various commentators have noted the close doctrinal relationship between *Rooker*-*Feldman* and abstention. *See Bass*, 224 F.Supp.2d at 960 n. 11.

allel but do not interfere with the state proceedings, the principles of comity underlying *Younger* abstention are not implicated." *Id.* at 627 (quoting *Gwynedd*, 970 F.2d at 1201). "The federal court interferes with state court proceedings if plaintiffs seek relief in federal courts to adjudicate anything that is currently before them or where. federal relief would render the state court's orders or judgment nugatory." *Id.* (quoting *Rappaport v. Norlar, Inc.*, No. 93–4756, 1994 WL 167959, at *9, 1994 U.S. Dist. LEXIS 5754, at *9 (E.D.Pa. Apr. 29, 1994)). Plaintiffs readily admit they seek injunctive relief from this Court directly contrary to the injunction issued against Associates in state court. This potential collision requires *Younger* abstention analysis.

### 1. There Are Ongoing State Proceedings

■ As discussed above, there have been several state judicial proceedings relating to this matter which are ongoing.

### 2. The State Proceedings Implicate Important State Interests

The Third Circuit addressed *Younger* abstention in *Gwynedd*, in which a real estate developer alleged that the township and members of the board of supervisors arbitrarily, maliciously, capriciously, and for their own interests rejected its plans for several parcels of land. 970 F.2d at 1196. There were several state court proceedings regarding the land. *Id.* at 1197–98. The developer then filed a federal court action alleging that the defendants acted in concert to prevent it from making full legal use of the property, to reduce the value of the property and the price the township would have to pay were it to acquire the property through condemnation proceedings. *Id.* at 1198. The developer alleged that it was entitled to relief under 42 U.S.C. § 1983 on the ground that the defendants denied it due process rights

and the right to be free from unreasonable searches, and asked for injunctive and monetary relief. *Id.* Thus, the legal issues presented in *Gwynedd* are similar to the issues in this case.

The Third Circuit has held that land use issues are of significant and particularly local concern. *Chez Sez III Corp. v. Township of Union*, 945 F.2d 628, 633 (3d Cir.1991), *cert. denied*, 503 U.S. 907, 112 S.Ct. 1265, 117 L.Ed.2d 493 (1992). However, the Third Circuit has also held in *Heritage Farms* that federal civil rights claims do not necessarily yield to state land use policies when there are allegations that the land use officials have conspired to destroy the plaintiff's constitutional rights to conduct legitimate business, and stated: "If it is an unlawful conspiracy like the one alleged here, the mere presence of land use issues should not trigger a mechanical decision to abstain." 671 F.2d at 748 n. 9. The *Heritage Farms* holding was cited in *Gwynedd*, 970 F.2d at 1202–03.

The Third Circuit held in *Gwynedd* that the district court erred in abstaining completely under the *Younger* doctrine, reasoning that there was no justification for abstention as to damage claims because the federal proceedings did not interfere with the state proceedings. *Id.* at 1203. The Third Circuit explained:

It is true that there is some overlap, factually and to a lesser extent legally, between this [federal] action and the proceedings pending in the common pleas court. . . .

However, with the exception of some aspects of [the developer's] claims for injunctive relief, as to which [the developer] concedes abstention is appropriate, the federal claims [for damages] demonstrate no disrespect for the state's jurisdiction to adjudicate any of the claims pending in the common pleas

court. Significantly, [the developer] does not seek to enjoin any state proceedings, nor does it challenge the legality of any township or municipal ordinance....

In contrast, the federal complaint is based on the appellees' allegedly unlawful course of conduct, and does not challenge the legality of any ordinance....

Clearly, therefore, [the developer's] federal cause of action does not raise the concern for federal-state comity addressed by *Younger* abstention....

The policies embodied in the Municipalities Planning Code are not being attacked—it is rather the application of those policies by a single township that is at issue....

*Id.* at 1201–02.

### (a) Plaintiffs' Claim for Damages

Similarly, in the instant action, Plaintiffs are not seeking to enjoin any state proceedings or challenge the legality of the Township's zoning ordinance. This federal action relates to Defendants' allegedly unlawful course of conduct in the application of the Township's zoning ordinance to Plaintiffs, because they are abortion providers. At least to the extent that Plaintiffs are seeking money damages, this action, therefore, does not raise the concern for federal-state comity addressed by *Younger* abstention. Thus, the second predicate of *Younger* abstention has not been satisfied to the extent that Plaintiffs are seeking money damages, because Plaintiffs seek damages primarily for denial of their federal civil rights which, as discussed above, was not the subject matter of the state administrative or judicial proceedings.

### (b) Plaintiffs' Claims for Injunctive Relief

To the extent Plaintiffs seek injunctive relief, however, the Court is guided by *Gwynedd,* which held that abstention was appropriate as to plaintiffs' claims for injunctive relief, because the federal claims for injunctive relief would have the effect of nullifying the pending state court injunction proceedings.

To the extent an injunction enjoining the appellees "from interfering with plaintiff's lawful use of its property," and "from entering onto plaintiff's property in violation of plaintiff's constitutional rights" would have the effect of nullifying the pending state tree-cutting injunction proceedings, *Younger* abstention is appropriate. Additionally, abstention is appropriate to the extent an injunction enjoining the appellees from denying approvals and permits would result in a *de facto* review of the township's zoning decisions currently under review in the state courts.

*Id.* at 1204; [13] *see also Windsor Jewels of Pa., Inc. v. Bristol Twp.,* No. 01–0553, 2002 WL 31999367, at *5, 2002 U.S. Dist. LEXIS 12163, at *17–18 (E.D.Pa. Mar. 28, 2002) (abstaining from adjudicating the plaintiffs' claims seeking injunctive relief).

As noted above, on March 11, 2003, the Montgomery County Court of Common Pleas issued an injunction, "pursuant to which [Plaintiffs were] forced to cease operations." (Pls.' Compl. ¶ 94). The injunctive relief Plaintiffs request in this Court is "a preliminary and/or permanent injunction enjoining [Defendants] from taking any and all enforcement action against [Plaintiffs] arising out of [their] use of the Subject Property as a medical office." *Id.* ¶ 153. At oral argument held

---

**13.** As noted above, the plaintiff in *Gwynedd,* a developer, did not oppose abstention as to its claim for injunctive relief.

on July 9, 2003, Plaintiffs conceded that if this Court were to grant the requested injunctive relief, such relief would be directly contrary to the state court injunction.

Plaintiffs, perhaps for strategic or legal reasons, did not file this case in this Court promptly after receiving resistance from the Defendants in the zoning proceeding in Upper Merion Township, or even in the appeals to the Montgomery County Court of Common Pleas. Rather, Plaintiffs did not file this case until after the Montgomery County Court of Common Pleas had entered a restraining order against Plaintiffs on March 11, 2003, which was followed, on April 22, 2003, eight days after the filing of this action, by a preliminary injunction. Once the state court entered an injunction, different abstention standards became effective, as noted in *Gwynedd.*

Plaintiffs contend, in disputing the application of the *Gwynedd* holding, that this Court could grant the requested injunctive relief under the authority of *New Jersey–Philadelphia Presbytery of the Bible Presbyterian Church v. New Jersey State Bd. of Higher Educ.,* 654 F.2d 868 (3d Cir. 1981) because Dr. Brigham and the patients, who were not parties to the state court proceedings, are asserting independent constitutional rights from Associates, and only Associates was a party to the state court proceedings.

In *Bible Presbyterian Church,* the Plaintiffs included not only certain religious institutions, but also students, parents of students, and a faculty member of the religious institutions. *Id.* at 870. The district court had granted in part and denied in part an application for preliminary injunctive relief against the enforcement of certain statutes and regulations of the state of New Jersey dealing with the licensing of private institutions of higher education. *Id.* at 872.

In prior state court proceedings, an injunction had been issued, enjoining the religious institutions from certain activities on the grounds that they had not complied with New Jersey's licensing scheme. *Id.* at 871. The federal district court enjoined the state board from taking any action preventing the college or its employees, servants, or agents from joining in any religious teaching or educational activities and ruled that the state court injunction should be modified to prevent such activities. *Id.* at 872.

The lengthy opinion by Judge Gibbons reviews the New Jersey state scheme for regulating educational institutions and emphasizes that many of the plaintiffs in the federal action were not parties to the prior state court proceeding, and had individual and First and Fourteenth Amendment rights distinct from the defendants in state court. The Third Circuit considered whether, under the doctrine of derivative preclusion, the district court should have abstained from issuing an injunction which contradicted the state court injunction. Judge Gibbons concluded that a majority of the Supreme Court has formulated derivative preclusion only in terms of an identity of economic activities and interest, *id.* at 878, and he concluded that at least some of the plaintiffs in the federal action had substantive and diverse First Amendment interests which were different from the interests of the Defendants who had been the subject of the state court injunction, relying in part on *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974):

> It is clear, then, ... that nonparties to the state enforcement proceedings who assert independent constitutional interests may advance those interests in a separate federal action. Since the interests of any of these plaintiffs alone are sufficient to justify the court's consideration of the application for a preliminary

injunction, that order cannot be reversed on the chief ground the Board advances, absent a very great extension of the *Younger* rule. . . .

*Id.* at 881 (footnote omitted).

In this case, although Dr. Brigham and the patients, (whose rights are asserted by Associates and Dr. Brigham), were not parties in the state court proceedings, abstention would still be proper if their interests are intertwined with the interests of Associates, because all Plaintiffs are seeking relief for Defendants' alleged violation of Plaintiffs' substantive due process rights in their application of a zoning ordinance. Indeed, Dr. Brigham is the owner of Associates, and thus his interests are economic and coterminous with those of Associates. These factors weigh in favor of abstention as to these Plaintiffs.

The question is more difficult as to the patients of Associates. The Court notes that they are not necessarily being deprived of their fundamental First Amendment right to choose an abortion because it is undisputed that abortions are generally available in Montgomery County, although Associates asserts that only it will provide low-cost abortions, without an existing doctor-patient relationship, and it advertises so as to make its services readily known. The Court must consider, after evidence is received, whether Associates' and Dr. Brigham's derivative representation of the patients warrants abstention.

In *Bible Presbyterian Church,* Judge Gibbons went to great length to note that although the state had a significant interest in its educational licensing program, affirming the district court's injunction was necessary to give the federal plaintiffs, who were not parties in the state court, protection against prior restraints on First Amendment rights. He also carefully demonstrated that the district court injunction did not nullify the state court injunction, but only modified it. Here,

ordering the defendants to allow Associates and Dr. Brigham to operate their business would indeed nullify the state court injunction. The Court cannot conclude that *Bible Presbyterian Church* controls this case before hearing evidence at the preliminary injunction hearing.

### 3. Whether The State Proceedings Afforded Plaintiffs an Adequate Opportunity to Raise Federal Claims

Plaintiffs' allegations, considered true in the context of a Motion to Dismiss, and supported to a significant extent by the exhibits of proceedings before the Zoning Hearing Board, assert that Associates did not have an opportunity to raise its federal constitutional claims before the Zoning Hearing Board. Although Plaintiffs admit Associates did not raise these claims in the first appeal to the Common Pleas Court, neither side explains why the court's opinion has a heading as to a "constitutional" challenge. "[T]he burden on this point rests on the federal plaintiff to show that state procedural law barred presentation of [its] claims." *Anthony,* 316 F.3d at 422 (quoting *Pennzoil,* 481 U.S. at 14, 107 S.Ct. 1519). As noted above, the Court of Common Pleas opinion dated March 13, 2003 in No. 02–10780 held that Plaintiffs' "substantive challenge" (which presumably includes the constitutional claim) was not properly before the Zoning Hearing Board because Associates did not have standing, and also Associates had not properly given notice to the Zoning Hearing Board of its intent to raise a constitutional/substantive challenge. Thus, state procedural law may have barred presentation of Plaintiffs' federal constitutional claims. However, even if this third prong is satisfied, this Court may not abstain if Plaintiffs prove the state court proceedings were instituted in bad faith.

The Court cannot finally conclude on the present record whether Plaintiffs had an opportunity to, or did, raise the federal claims at all times in state court, or whether the state proceedings were filed in bad faith. Thus, the Court will defer ruling on abstention as to injunctive claims at this time, with leave to the parties to present evidence at the preliminary injunction hearing on these points, with Plaintiffs having the burden of proof, so that the Court can make a final determination on *Younger* abstention, as to injunctive relief.

## B. *Pullman* Doctrine

■ Under *Railroad Comm'n of Texas v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), abstention may be appropriate where a federal court is presented with both a federal constitutional issue and an unsettled issue of state law whose resolution might narrow or eliminate the federal constitutional question under principles of comity in order to avoid needless friction with state policies.

The first step in the *Pullman* analysis is to determine whether three special circumstances exist: (1) uncertain issues of state law underlying the federal constitutional claims brought in federal court; (2) state law issues amenable to a state court interpretation that would obviate the need for, or substantially narrow, the scope of adjudication of the constitutional claims; (3) a federal court's erroneous construction of state law would be disruptive of important state policies. *Chez Sez III*, 945 F.2d at 631 (citation omitted) (affirming the district court's order abstaining pursuant to the *Pullman* doctrine because the zoning ordinance presented unsettled issues of state law). If a district court finds all three of the "special circumstances" present, it must then make a discretionary determination as to whether abstention is in fact appropriate under the circumstances of the particular case, based on the weight of the criteria and other relevant factors. *Id.*

### 1. There Are No Uncertain Issues of State Law

Defendants argue that underlying Plaintiffs' constitutional challenge is their dispute with Defendants' interpretation and application of the terms "clinic" and "professional office," and that the interpretations of these terms are "unsettled issues of state law." (Defs.' Mem. Law Supp. Mot. Dismiss at 26–27). Plaintiffs argue that Defendants cannot point to any basis for asserting that there is any unclear state law issue involved in the case because this case is about the deliberate selective application of the local zoning ordinance to keep out known abortion providers. (Pls.' Mem. Law Opp. Defs.' Mot. Dismiss at 46).

Unlike the situation in *Chez Sez III* in which the plaintiffs challenged the interpretation of certain zoning ordinance terms, Plaintiffs in the instant action do not challenge Defendants' interpretation of the terms "clinic" and "professional office" under state law. Plaintiffs only challenge Defendants' allegedly selective application of those terms in violation of their substantive due process rights. The Court, therefore, finds that there are no uncertain issues of state law underlying Plaintiffs' federal constitutional claims. Because the Court has found that the first "special circumstance" is not present, the Court need not determine whether the remaining two "special circumstances" are present in order to find that abstention under the *Pullman* doctrine is not appropriate. See *Chez Sez III*, 945 F.2d at 631.

### C. Conclusion Regarding Abstention

For the reasons set forth above, the Court finds that abstention under the *Younger* doctrine or *Pullman* doctrine is

not appropriate to the extent that Plaintiffs are seeking money damages. To the extent Plaintiffs are seeking injunctive relief, the Court defers decision under the *Younger* doctrine until the preliminary injunction hearing develops evidence on the issues raised above.

## IV. Defendants' Arguments in Support of Dismissing Plaintiffs' Claims of Denial of Due Process

Count I of Plaintiffs' Complaint is entitled "Deprivation of Due Process and Equal Protection." Count II asserts violations of the rights of association and privacy, primarily on behalf of Associates' patients. Count IV is entitled "Deprivation of Property without Due Process," all relying on 42 U.S.C. § 1983. From the allegations of the Complaint, it is apparent that Plaintiffs are claiming deprivations of both procedural due process and substantive due process. This Memorandum will first discuss allegations relating to denial of substantive due process.

### A. Substantive Due Process Claims

■ Defendants move to dismiss Plaintiffs' claims on the grounds that the Complaint fails to allege a violation of substantive due process. Defendants argue that the alleged violation of property rights does not "shock the conscience," as required for a substantive due process claim based on executive action. Furthermore, Defendants argue that Plaintiffs' privacy claim is deficient because it merely seeks protection of the right to a discounted abortion, which is not covered by the constitutional right to privacy. (Defs.' Mem. Law. Supp. Mot. Dismiss at 10–11). Without claiming "that the Township enforced its zoning regulations to generally bar the provision of abortions in the Township," Defendants believe that Plaintiffs have failed to state a violation of the right to privacy. *Id.* at 11.

Central to Plaintiffs' claims of deprivation of substantive due process is Defendants' characterization of Associates' business as a "clinic." Associates asserted in its appeal to the Board, as it does in this Court, that the Township's characterization of Associates as a "medical clinic for treatment of humans" rather than as a "professional office" was arbitrary and capricious and amounts to selective enforcement of the Code.

Because the Code makes a distinction between "offices for ... professional use" and a "medical and dental clinic for treatment of humans" but does not contain definitions for either term, at the hearings on Associates' appeal, the Board took testimony from various experts to assist it in defining Associates' facility. *See* Ex. 3. Deborah Kitz, Ph.D., who specializes in examining the economic impact of patient care on health care providers, testified for Associates that its facility was a "professional medical office" because it provided counseling, diagnosis, examination, and treatment. *Id.* at 7–8. John Fitzgerald, III, M.D., an expert in obstetrics and gynecology, testified for the citizens protesting against the clinic that if abortions constitute the majority of procedures performed at a facility, then it is an "abortion clinic." *Id.* at 9. George Asimos, Jr., Esq., an expert in real estate law, testified for the Township that based on his review of the testimony at previous hearings, the facility was a "medical clinic." *Id.*

The Board did not find any of the testimony helpful in "resolving the issue of whether the use described by [Associates] is an 'office for a professional use' or a 'medical clinic for the treatment of humans.'" *Id.* at 10. Instead, the Board was "guided by the results and reasoning in several cases where the proposed use fit into a number of different categories in the

zoning ordinance. In each case, the court held that where a use fits more *specifically* into one category than another, the specific characterization controls." *Id.* at 16 (emphasis in original). The Board found that "whatever characteristics [Associates'] use may have in common with a 'professional office,' the use fits *more specifically* into the category of 'medical clinic for treatment of humans.'" *Id.* at 18 (emphasis in original). The Board's decision was affirmed by the Montgomery County Court of Common Pleas on appeal.

The Abortion Control Act, 18 PA. CONS. STAT. ANN. § 3203, does not define "clinic,"[14] and the term is not otherwise defined under state law. In determining that Associates' practice was a clinic according to the Township's Code, the Board simply decided that Associates was a clinic because it fit more specifically into that category than the category of professional office. Without any binding definition of "clinic," the Board could just as easily have reached the converse conclusion. Therefore, Plaintiffs have stated a claim that the Township's characterization of Associates as a "medical clinic for treatment of humans" rather than as a "professional office" was arbitrary and capricious and amounts to selective enforcement of the Code.

### 1. Legal Standard for a Substantive Due Process Violation Claim

To state a substantive due process claim resulting from executive action in a land dispute, Plaintiffs must allege official behavior that "shocks the conscience." *United Artists Theatre Circuit, Inc. v. Township of Warrington, PA,* 316 F.3d 392, 401 (3d Cir.2003), *reh'g denied,* 324 F.3d 133 (3d Cir.2003). As outlined by the Supreme Court in *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), the shock the conscience standard limits due process violations resulting from executive action to cases involving only the most egregious and arbitrary official conduct. *Id.* at 399 (quoting *Lewis,* 523 U.S. at 845–46, 118 S.Ct. 1708). What shocks the conscience, however, is a flexible standard that depends on the factual context of the particular case at hand. *Id.* at 400. For example, when a state actor has time to deliberate prior to committing the offending behavior, the standard for conscience-shocking behavior is lower than it would be in "hyperpressurized situations" that afford no time to consider the action. *Estate of Smith v. Marasco,* 318 F.3d 497, 509 (3d Cir.2003).

With respect to the alleged violation of the right to privacy, the shock the conscience test is consistent with the "undue burden" standard established by the Supreme Court for state regulation of abortion. *Planned Parenthood of Southeastern Pa. v. Casey,* 505 U.S. 833, 877, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). Though *Casey's* language applied the undue burden standard to statutes and regulations that restrict access to abortion, several courts have applied the same test to executive action and executive interpretation of statutes and regulations. *See Planned Parenthood of Greater Iowa, Inc. v. Atchison,* 126 F.3d 1042, 1048 (8th Cir. 1997) (applying *Casey* undue burden analysis to a state agency's decision to apply rigorous certification requirements to an

**14.** The Act defines "facility" or "medical facility" as:

[a]ny public or private hospital, *clinic,* center, medical school, medical training institution, health care facility, physician's office, infirmary, dispensary, ambulatory surgical treatment center or other institution or location wherein medical care is provided to any person.

18 PA. CONS.STAT. ANN. § 3203 (emphasis added).

abortion provider); *Planned Parenthood of Northern New England v. City of Manchester,* No. CIV.A.01–83, 2001 WL 531537, at *2 (D.N.H. Apr.27, 2001) (unpublished opinion) (noting that it would be unconstitutional for an executive body to deny a building permit to abortion provider merely because it provided abortions); *Roe v. Leis,* No. CIV.A.00–651, 2001 WL 1842459, at *3 (S.D.Ohio Jan.10, 2001) (holding that county sheriff's interpretation of regulations was subject to *Casey* test for undue burden).

Because the Third Circuit has only recently adopted the shock the conscience test to apply to executive action in land disputes, there is no case law indicating how the standard interacts with the undue burden rule. Nevertheless, given the clarity of the *United Artists* holding, the Court concludes that the shock the conscience test should apply to plaintiffs' privacy claim. In the context of a Rule 12(b)(6) motion, Plaintiffs' allegations that Defendants acted with the purpose of creating a substantial obstacle to abortion supports a claim of an impermissible undue burden on the right to an abortion, and Plaintiffs' allegations of governmental action intended to create a substantial obstacle to abortion may be one type of arbitrary state action prohibited under the shock the conscience standard.

### 2. Property Interests Allegedly Violated by Defendants

To state a substantive due process claim under § 1983, "a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Woodwind Estates, Ltd. v. Gretkowski,* 205 F.3d 118, 123 (3d Cir.2000). Plaintiffs claim first that Defendants have violated their property rights to their leased office space. Use and enjoyment of property are interests protected by substantive due process. *DeBlasio v. Zoning Bd. of Adjustment,* 53 F.3d 592, 600–01 (3d Cir.1995). This interest applies to leaseholds as well as ownership. *See Neiderhiser v. Borough of Berwick,* 840 F.2d 213, 218 (3d Cir.1988) (finding a violation of due process in a zoning dispute where a municipality interfered with a lessee's enjoyment of property); *American Fabricare v. Township of Falls,* 101 F.Supp.2d 301, 309 (E.D.Pa.2000) (applying substantive due process analysis to lessee's claim). Substantive due process also protects the right "to contract, to operate a business, and to engage in the livelihood of one's choice, free from state interference." *Palma v. Lansdale,* No. CIV.A.89–4647, 1991 WL 91557, at *7 (E.D.Pa. May 28, 1991) (citing *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)).

Secondly, Plaintiffs claim that Defendants violated their patients' privacy rights. The Supreme Court has firmly and repeatedly stated that a woman's constitutional liberty to choose an abortion is protected by substantive due process. *Casey,* 505 at 869, 112 S.Ct. 2791. Thus, by alleging that Defendants deprived them of their property rights and violated their patients' rights of privacy, Plaintiffs have claimed that interests protected by the Due Process Clause were violated.

### 3. Plaintiffs Have Adequately Claimed a Substantive Due Process Violation for Deprivation of Property Rights

In the instant case, Plaintiffs allege that the Township enforced the zoning laws against it solely because it was an abortion provider. Defendants rely on provisions of the zoning code which only gives such rights to the owner of a property, whereas Plaintiff Associates is only a lessee. Although Defendants' position may have validity as to the likelihood of Plaintiffs prevailing on the merits, or at trial, Plaintiffs' allegations suffice for purposes of Defendants' Rule 12(b)(6) Motion. In accepting

Plaintiffs' allegations as true, the Township acted based on impermissible discriminatory animus. *See City of Manchester,* 2001 WL 531537, at *2 (noting that it would be unconstitutional for an executive body to deny a building permit to abortion provider merely because it provided abortions). Abortion providers may be subject to regulation only to the extent that regulation serves a state interest. *Atchison,* 126 F.3d at 1049. Alleged actions intended "to eliminate the provision of abortion services in the Township" (Pls.' Compl. ¶ 109) do not further a valid state interest. Allegations of enforcing zoning regulations with the intent to harm Plaintiffs' business interests and to restrict their practice of lawful medical procedures states a claim that shocks the conscience. *See Lewis,* 523 U.S. at 849, 118 S.Ct. 1708 ("conduct intended to injure in some way unjustifiable by any governmental interest is the sort of official action most likely to rise to the conscience-shocking level."). Thus, Plaintiffs have pled facts sufficient to support a substantive due process claim for deprivation of property rights.

Defendants argue that Plaintiffs cannot meet the shock the conscience test because local administrative and judicial officials expressed no reservation in affirming enforcement of the zoning law. This argument does not undermine Plaintiffs' well-pled substantive due process claim, however, because neither the Zoning Hearing Board nor the Court of Common Pleas actually considered the substantive issue of whether the Township was selectively enforcing the zoning law in violation of Associates' constitutional rights. The issue of whether the Township's enforcement was motivated by discriminatory animus was not addressed by the reviewing bodies, and so *it is not surprising that their decisions did not express reservations on these grounds.*

To the extent that Defendants also argue that Plaintiffs failed to make a facial challenge to the constitutionality of the Township's zoning laws, Defendants misconstrue the substantive due process violation claimed. (Defs.' Reply. Br. at 4–5, 7). Plaintiffs do not challenge the zoning regulations themselves, but rather allege that Defendants selectively applied the zoning laws based on discriminatory animus towards abortion providers and that this application violated due process. (Pls.' Mem. Law. Opp. Defs.' Mot. Dismiss at 31). Defendants arguments to the contrary are inapposite here.

### 4. Alleged Selective Enforcement of Zoning Laws for the Purpose of Restricting Abortions States a Claim for Denial of the Right of Privacy

The plain language of *Casey* suggests that a municipality violates the right to privacy protected by due process if it acts with the *purpose* of creating a substantial obstacle to the right to an abortion.[15] *Ca-*

---

**15.** Plaintiffs also allege that the *effect* of Defendants' alleged actions will be to create an undue burden on abortion because it will raise the cost to patients and reduce access to abortion services in the Township. Regardless of the intent behind a statute or regulation, restrictions on a medical practice that provides abortions are unconstitutional if they have the effect of creating a substantial obstacle to abortion. *Casey,* 505 U.S. at 878, 112 S.Ct. 2791. There is a family of cases that supports invalidating regulation of abortion providers if it increases costs and travel time for patients. *See, e.g., City of Akron v. Akron Ctr. for Reproductive Health, Inc.,* 462 U.S. 416, 438, 450, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983) (striking down a municipal ordinance that allowed second-and third-trimester abortions to be performed only in hospitals because the regulation doubled the cost to patients); *American College of Obstetricians and Gynecologists, Pennsylvania Section v. Thornburgh,* 737 F.2d 283, 293 (3d Cir.1984) (invalidating a 24–hour waiting period in Pennsylvania due to the increased cost imposed);

*sey,* 505 U.S. at 878, 112 S.Ct. 2791 (emphasis added). There is significant case law from lower courts, however, that supports the proposition that state action intended to burden the right to abortions constitutes a violation of substantive due process.

In *Atchison,* the Iowa Department of Health responded to pressure from anti-abortion groups and citizens by subjecting an abortion provider to an intensive "certificate of need" regulatory process from which other medical practices had been exempted. 126 F.3d at 1044. Although an interpretation of Iowa law conceivably permitted the certificate of need process to be applied to the Planned Parenthood clinic, the district court found that the state would not have required the clinic to satisfy the certificate of need requirements if it was not an abortion provider. *Id.* at 1046. The Eighth Circuit affirmed the district court's judgment that the Department of Health's actions created an undue burden under *Casey,* holding that "[w]here a requirement serves no purpose other than to make abortions more difficult, it strikes at the heart of a protected right, and is an

unconstitutional burden on that right." *Id.* at 1049.

In *City of Manchester,* a New Hampshire federal district judge considered whether a local Zoning Board of Adjustment violated due process when it revoked a building permit that it had initially granted an abortion provider. 2001 WL 531537 at *7. The court reasoned that "the variance sought for the medical office use could not have been lawfully or constitutionally denied based merely upon the identity of the Owner's tenant." *Id.* at *2. Finding that the plaintiffs were likely to prove that the Zoning Board had acted based on a discriminatory animus toward abortion providers, the court issued a preliminary injunction. *Id.* at *7.

Both *Atchison* and *City of Manchester* affirm the proposition that a showing of intent to block access to abortion is sufficient to establish a constitutional violation under *Casey.* Case law preceding *Casey* further established that state action with the purpose of restricting access to abortion is unconstitutional. For example, in *Deerfield Medical Center v. City of Deerfield Beach,* 661 F.2d 328, 330 (5th Cir.

---

*Ragsdale v. Turnock,* 841 F.2d 1358, 1370 (7th Cir.1988) (finding that a restriction on abortion doctors that increased the cost of abortions by $25–40 was a substantial burden on the right to abortion). There is a competing line of cases, however, in which courts have declined to hold that state action that increases the cost of abortions imposes an undue burden. *See Casey,* 505 U.S. at 886–87, 112 S.Ct. 2791 (finding 24–hour waiting period requiring a second clinic visit did not impose an undue burden despite increasing the economic and emotional cost of abortions); *Greenville Women's Clinic v. Bryant,* 222 F.3d 157, 172 (4th Cir.2000) (rejecting facial challenge to regulation of abortion providers that increased the cost per abortion between $23–75).

In the instant case, Plaintiffs claim that they offer abortion services that are "significantly less expensive than hospital-based providers of such services and significantly less expen-

sive than abortion services provided by medical professionals who do not advertise abortion services." (Pls.' Compl. ¶ 16). Plaintiffs also assert that they target women seeking abortions who do not have a doctor-patient relationship with a medical practice from which they can secure abortion services. *Id.* ¶ 17. Finally, Plaintiffs allege that there are no other providers of abortions in Montgomery County who advertise their services to the public. *Id.* ¶ 108. Taken together, and interpreted liberally, such allegations may rise to the level of an undue burden on the right to an abortion of Associates' patients. For purposes of the instant Motion to Dismiss, however, it is unnecessary to rule on whether such effects are an undue burden or conscience-shocking because Defendants' alleged discriminatory intent is sufficient to establish a claim for violation of substantive due process. *See* text, *infra.*

Unit B Nov.1981), a municipality denied an occupational license to open an abortion facility on the grounds that the facility would conflict with local zoning ordinances. Applying close scrutiny to whether the City of Deerfield had narrowly tailored its restriction on abortion, the Fifth Circuit noted that the motivating factor behind the restriction was the impermissible purpose of restricting access to abortion. *Id.* at 331 n. 5, 338 n. 16. The Court found, on these and other grounds, that the restriction was not justified and reversed the district court's decision to deny a preliminary injunction. *Id.* at 338. *Cf. Bossier City Med. Suite, Inc. v. City of Bossier City,* 483 F.Supp. 633, 650 (W.D.La.1980) (permitting enforcement of preexisting zoning ordinance against abortion provider because the court found no discriminatory animus toward abortion behind municipality's actions).

In *P.L.S. Partners, Women's Medical Center of Rhode Island v. City of Cranston,* 696 F.Supp. 788, 790–91 (D.R.I.1988), an abortion provider challenged a municipality's classification of a proposed outpatient abortion facility as a hospital rather than a health care facility. Although the local zoning ordinance automatically permitted a health care facility to be built in the zone in question, constructing a hospital required a special use permit issued by the city's building inspector. *Id.* at 790. Municipal officials decided to classify the abortion provider as a hospital after receiving complaints from residents about the location of an abortion clinic in Cranston. In holding that this decision violated the right to privacy, the court presumed that state action motivated solely by hostile intent toward abortion providers was unconstitutional. *Id.* at 798 ("There is no question that abortion has been singled out for special treatment by the city of Cranston.").

Such precedent is strong authority for the proposition that a municipality that selectively enforces a zoning law against a medical practice because it performs abortions violates the constitutionally protected right to an abortion. This authority is consistent with the plain language of *Casey,* which prohibits state action intended to restrict abortion. Moreover, state action that has no justification other than to impede access to abortion is unconstitutional under the shock the conscience test. Such action arbitrarily infringes upon the constitutionally protected right to an abortion and is exactly the type of egregious executive act that the shock the conscience test prohibits.

In the instant case, Plaintiffs have pled that the Township was motivated by discriminatory animus toward abortion providers. (Pls.' Compl. ¶¶ 26–27, 102). Plaintiffs allege that the Township and its officials selectively enforced the zoning regulations against Associates with the intent of eliminating the provision of abortion services in the Township. *Id.* ¶ 109. Accepting such allegations as true, as the Court must for a 12(b)(6) motion to dismiss, Plaintiffs have stated a claim that Defendants' conduct arbitrarily and capriciously deprived Associates' patients of the constitutionally protected right of privacy. The behavior alleged by the plaintiffs satisfies the shock the conscience test and establishes a claim upon which relief may be granted.

5. **Plaintiffs have Stated a Claim for an Equal Protection Violation**

██ In the context of this case, the finding that Plaintiffs have adequately pled a substantive due process violation also satisfies the elements of an equal protection claim. *See P.L.S. Partners,* 696 F.Supp. at 798 (finding an equal protection

violation "for essentially the same reasons" as a due process violation). By Plaintiffs alleging that Defendants' actions shocked the conscience with respect to the due process claims, the court explicitly holds that Plaintiffs have alleged arbitrary and capricious state action. Plaintiffs have also alleged that the Township treated its medical practice differently than other similarly situated medical practices. Thus, even under the rational basis review Defendants advocate, (Defs.' Mem. Law. Supp. Mot. Dismiss at 12–13), this Court finds that Plaintiffs have stated an equal protection claim because the selective enforcement was arbitrary and unrelated to any governmental interest.

## B. Procedural Due Process

■ The Third Circuit has held that due process requires that a deprivation of a property interest be preceded by notice and opportunity for hearing, appropriate to the nature of the case. *Gikas v. Washington School District*, 328 F.3d 731 (3d Cir.2003). *See also Alvin v. Suzuki*, 227 F.3d 107 (3d Cir.2000), which held that a state actor's failure to provide procedural due process requires a two-step analysis: (1) whether the plaintiff has asserted an individual interest encompassed within the Fourteenth Amendment, and (2) whether the procedures available provided plaintiff with due process of law.

One allegation relating to procedural due process is found in paragraph 46 of the Complaint, alleging that Plaintiffs' counsel was not allowed to adduce evidence or cross-examine witnesses regarding arbitrary and selective enforcement, or discriminatory animus, and issues relating to the constitutionally protected rights of Plaintiffs or their patients during the hearings before the Zoning Hearing Board. Further, in paragraph 66, Plaintiffs allege that at the hearing on Associates' appeal, the Zoning Hearing Board refused

to allow Associates' counsel to cross-examine the zoning officer regarding Associates' contention concerning selective enforcement of the zoning code against Associates because it provides abortions.

In paragraphs 67–68, Plaintiffs allege intentionally improper notice of Associates' right to appeal the enforcement order to the Zoning Hearing Board.

Plaintiffs further allege additional procedural due process violations in the Township's issuance of criminal citations (paragraphs 72–82) and improper civil penalties (paragraphs 84–88).

Defendants specifically assert that "Plaintiffs' procedural due process claim fails because it is well settled that Pennsylvania 'affords a full judicial mechanism with which to challenge the administrative decision' made by local officials." (Defs.' Mem. Law. Supp. Mot. Dismiss at 9). (quoting *Bello v. Walker*, 840 F.2d 1124, 1128 (3d Cir.1988) (holding that statutory scheme allowing review of denial of building permit did not violate due process)).

The Due Process Clause encompasses a guarantee of fair procedure. *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). This "fair procedure" that the Due Process Clause guarantees is embedded in Pennsylvania law in 53 P.S. § 10908(5). In examining this statute, it is clear that "the legislature in the use of the word 'shall' in both the introductory paragraph and subparagraph (5) of [53 P.S. § 10908] made it mandatory that in all hearings before a zoning hearing board the parties are entitled, as a matter of due process to, ... 'cross-examine adverse witnesses.' " *Appeal of Little Britain Tp.*, 651 A.2d 606, 615 (Pa. Commw.Ct.1994) (reversing decision of Court of Common Pleas which affirmed zoning hearing board's decision and dismissed plaintiff's appeal of zoning officer's enforcement notice). Based on the allega-

tions of the Complaint, the Court cannot dismiss the procedural due process claims because the state court procedures, which Defendants cite as providing a remedy, were not followed, and after four separate administrative and judicial proceedings, Associates has never had a hearing on the merits of its selective enforcement claim, and finds itself barred from proceeding with its business.

## V. Count III—Plaintiffs' Conspiracy Claim

Defendants have also moved to dismiss Count III, which alleges a conspiracy to deprive persons of constitutionally protected rights, pursuant to 42 U.S.C. § 1985(3). Plaintiffs' allegations as to Count III incorporate prior averments, but otherwise do not state any facts in support, alleging in paragraph 129 only conclusions.

In addition, in the unnumbered "Introduction" to the Complaint, which the Court does not construe as one of the allegations, Plaintiffs state that Defendants are liable for "conspiring with and among themselves in order to hamper or interfere with the plaintiffs' patients' ability to exercise their Constitutional right to secure abortion services in violation of 42 U.S.C. § 1985(3)." (Pls.' Compl. at 3).

The Complaint, construed liberally in Plaintiffs' favor, does contain a number of facts indicating that the various named Defendants jointly did certain acts in violation of Plaintiffs' rights. To the extent that Defendants are sued in their official capacity, they are incapable of conspiring among themselves. In their official capacity, Defendants are legally considered part of the governmental entities by whom they are employed, the Upper Merion Township, the Township Board of Supervisors, and/or the Township Zoning Hearing Board. *Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). These governmental entities are all considered part of the governmental structure of Upper Merion Township, and it is hard to understand how they could conspire among themselves. Furthermore, these entity Defendants are not subject to *respondeat superior* claims under the federal civil rights laws for the acts of their employees under *Monell v. Dept. of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Thus, Plaintiffs' conspiracy claims are not legally sustainable as to Defendants in their official capacity.

Plaintiffs may allege a conspiracy against the individual Defendants insofar as Plaintiffs allege that they acted in their individual capacity.

Plaintiffs also rely on the fact that they have sued the unnamed Defendants, characterized in the Complaint as Doe Defendants, but have not specified their identity or any conspiratorial actions. Plaintiffs have indicated that they will promptly amend their Complaint to identify the Doe Defendants and to specify the actions that they took.

The Court concludes that Plaintiffs have not adequately pled a conspiracy against Defendants acting in their individual capacity, but that Plaintiffs should be given an opportunity to do so. Therefore, the Court will dismiss Count III of the Complaint, without prejudice to Plaintiffs filing an Amended Complaint with allegations sufficient to put the individual Defendants, and any additionally named Defendants, on notice as to the claims of conspiracy against them. The Amended Complaint should allege the nature and purpose of the conspiracy, and distinguish those actions alleged to be conspiratorial from those ministerial actions taken by the individual Defendants in carrying out their official functions.

## VI. Defendants' Assertions that Immunity Requires Dismissal of Plaintiffs' Claims Under § 1983

Defendants contend various theories of immunity apply to warrant dismissal of the individual Defendants in their individual capacity, individual defendants in their official capacity, and the Defendant local agencies, from all of the § 1983 claims.

### A. Qualified Immunity

 Defendants assert qualified immunity for all individual Defendants named in their individual capacities, as to all claims brought under § 1983. The Court initially rejects Defendants' position that the claims against Defendants, in their individual capacities, should be dismissed because the Complaint alleges no acts other than their actions in their official capacities. Plaintiffs may allege that actions taken were improper by the Defendants acting, in either, or both, their individual and/or official capacities. The test for qualified immunity was recently stated by the Third Circuit in *United Artists, supra.* Qualified immunity applies so long as the officials' conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. 316 F.3d at 398. In determining whether qualified immunity applies, there are two primary questions: (1) whether the plaintiff has alleged the deprivation of an actual constitutional right (which these Plaintiffs clearly have), and if so, (2) whether the right was clearly established at the time of the alleged violation. *Id.*

Defendants have phrased their argument on qualified immunity as to imply that Plaintiffs are asserting that the individual Defendants would have to have known that their definitions of a "clinic" and their other ministerial applications of the zoning code were themselves designed to violate a known constitutional right. This assertion does not give fair reading to the Plaintiffs' allegations.

In this case the allegations state that Defendants acted intentionally to prevent Plaintiffs from carrying out a business of providing abortions and other medical services to women, which the Supreme Court has clearly held for over thirty years are protected activities. Defendants are charged with knowledge that these are fundamental constitutional rights and thus qualified immunity is not available, at least as asserted against the allegations of the Complaint in the context of a Motion to Dismiss under Rule 12(b)(6).

### B. Quasi–Judicial Immunity as to Zoning Hearing Board Members

 Regarding immunity for individual Defendants McBride, Fiore, and Whitmore (members of the Zoning Hearing Board), Defendants rely on the doctrine of judicial immunity, and the associated doctrine of quasi-judicial immunity.

Under the doctrine of judicial immunity, judges are immune from suit for an individual's actions taken in a judicial capacity. The theory behind judicial immunity allows that "most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability." *Forrester v. White*, 484 U.S. 219, 227, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). Because such immunity is absolute with regard to claims relating to the exercise of judicial functions, *Antoine v. Byers & Anderson*, 508 U.S. 429, 433 n. 8, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993), a judge is not deprived of immunity if he acted in error or with malicious intent. *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (citing *Randall v. Brigham*, 7 Wall. 523, 351, 74 U.S. 523 (1869)).

In determining whether or not an act is judicial in nature, courts commonly look to two factors: first, whether the function is one that is normally performed by a judge, and, second, whether the parties expected to have dealings with the judge in his judicial capacity. *Id.* at 362, 98 S.Ct. 1099. Further, judicial immunity does not apply for actions not taken in a judge's judicial capacity, nor does it apply to judicial actions taken in complete absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11–12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991).

In an effort to protect non-judges who perform judge-like functions, the Supreme Court has held that, in the context of § 1983, there exists a quasi-judicial status. As a result, the concept of judicial immunity is extended to officials who, though not judges, perform tasks similar to judges. *Antoine*, 508 U.S. at 435–36, 113 S.Ct. 2167. Further, the Third Circuit has held that, in ruling on a zoning permit application, zoning boards perform a quasi-judicial function according to the factors outlined above, thereby qualifying for judicial immunity. *Omnipoint Corp. v. Zoning Hearing Board of Pine Grove*, 181 F.3d 403, 409 (3d Cir.1999).

Defendants assert that the individual Defendants, McBride, Fiore, and Whitmore are members of the Board whose "sole alleged involvement in this action was hearing and deciding plaintiff's appeal of [the] ... initial zoning decision," and that, because this qualifies as a quasi-judicial function, they are entitled to absolute immunity. (Defs.' Mem. Law Supp. Mot. Dismiss at 3). The record of the Board's proceedings supports Defendants.

This Court has repeatedly recognized that quasi-judicial immunity protects qualified officials in an individual-capacity action. *See, e.g., Ryan v. Lower Merion Township*, 205 F.Supp.2d 434, 439 (E.D.Pa.2002) ("Judicial immunity is extended to those performing 'quasi-judicial'

functions."). Accordingly, the individual Board members are immune from claims against them in their individual capacities because their actions may properly be characterized as quasi-judicial in nature. Defendants McBride, Fiore, and Whitmore will be granted judicial immunity, and all of Plaintiffs' claims against them in their individual capacities will be dismissed with prejudice.

■ Regarding Defendants' claims that the individual Defendants are entitled to absolute immunity to the extent that they are named as Defendants in their official capacity, quasi-judicial immunity *only* protects qualified officials in an individual-capacity action. The Supreme Court has held that "[s]uits against state officials in their official capacity ... should be treated as suits against the State." *Hafer*, 502 U.S. at 25, 112 S.Ct. 358. Therefore, "the only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses." *Id., cited in Smith v. School District of Philadelphia*, 112 F.Supp.2d 417, 424–25 (E.D.Pa.2000).

This Court has recognized that when a zoning board is sued, "it is sued in its official capacity and is entitled to no immunity whatsoever." *Schiazza v. Zoning Hearing Board of Fairview Township*, 168 F.Supp.2d 361, 374 (M.D.Pa.2001), *cited in Ryan*, 205 F.Supp.2d at 439. Therefore, Defendants' claim that, during the relevant events, the Board and its members were acting in a quasi-judicial capacity and are therefore protected by the doctrine of quasi-judicial absolute immunity, cannot extend to the actions of the agency, including those acts undertaken by the individual Defendants in their official capacities. (Defs.' Mem. Law Supp. Mot. Dismiss at 3).

## C. *Respondeat Superior* Liability Under § 1983

Plaintiffs' Complaint does not clearly state § 1983 claims under *respondeat superior* against any of the entity Defendants. Defendants correctly argue that public entities cannot be held liable under the theory of *respondeat superior* under § 1983. However, an exception to *respondeat superior* exists "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts may fairly be said to represent official policy, inflicts injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694, 98 S.Ct. 2018. Although Plaintiffs argue that Defendants' actions fall under this exception, the Complaint fails to plead a pattern or practice, as required by *Monell*. Plaintiffs will be granted leave to amend.

## D. Immunity as to the Individual Defendants, Upper Merion Township, the Board of Supervisors, and the Zoning Hearing Board under State Law Claims

In arguing for immunity from state claims, Defendants point to the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. Cons.Stat. Ann. § 8541 (2003), which states that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person," subject to specifically enumerated exceptions and limitations.

With regard to employees of a local agency, immunity does not apply if it is "judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct...." *Id.* § 8550. For purposes of tort law, the state of Pennsylvania has defined willful misconduct as conduct whereby "the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied." *Robbins v. Cumberland County Children and Youth Services*, 802 A.2d 1239, 1253 (Pa. Commw.Ct.2002).

Defendants contend that the Township employees who have been named as individual Defendants are immune from suit under § 8541 because of their status as employees of a local agency. Plaintiffs counter that, due to their willful misconduct, the individually named Defendants may be liable under the above-noted § 8550 exception.

In their Complaint, Plaintiffs allege that "the individual named Defendants, acting in both their individual and official capacities, directed the Township Zoning Officer to conduct an inspection of Associates' offices for the purpose of finding a basis to force Associates to cease operations." (Pls.' Compl. ¶ 28). Further, Plaintiffs allege that the actions taken by the Township, at the direction of the individual Defendants, were done "with the sole, express, malicious, and unlawful intent of depriving Associates, its patients and Dr. Brigham of their rights...." *Id.* ¶ 103. Plaintiffs also allege that the individual Defendants "knowingly participated in the unlawful activity and fully understood that their acts unfairly and unlawfully discriminated against [Plaintiffs]," and that they "acted at all times with no good faith belief in the legality of their acts...." *Id.* ¶¶ 104, 107.

In response, Defendants argue that "[e]ach individual employee was acting within the scope of his or her duties at all times with respect to the acts alleged in the complaint." (Defs.' Mem. Law Supp. Mot. Dismiss at 20). Further, Defendants cite the favorable decisions of the Board and Court of Common Pleas to support

their argument that Plaintiffs' allegations are "contrary to matters of public record or other judicially noticeable facts." *Id.* at 21.

When considering a Rule 12(b)(6) motion, the Court "must accept as true all of the allegations set forth in the complaint and must draw all reasonable inferences in favor of the plaintiff." *Ford v. Schering–Plough Corp.*, 145 F.3d 601, 604 (3d Cir. 1998). Accordingly, the plaintiff's claim can only be dismissed if plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 604.

Plaintiffs allegations constitute knowingly illegal actions or willful misconduct on the part of individual Defendants. The accepted standard of review when considering a motion to dismiss is one that considers "all reasonable inferences in the plaintiffs' favor," *id.*, and Defendants' arguments refuting Plaintiffs' allegations are based on disputed matters of fact. Therefore, Defendants' Motion to Dismiss on grounds that the individual Defendants are shielded under the Tort Claims Act will be denied.

■ Defendants also contend that the agencies named as Defendants are immune from suit pursuant to § 8541, because of their local agency status. Sovereign immunity for local agencies is waived in occurrences of the following eight exceptions: (1) negligent operation of a motor vehicle; (2) negligent care, custody, or control of real property; (3) negligent care of real property; (4) negligent care of trees, traffic controls, or street lights; (5) negligent care of utility service facilities; (6) negligent care of streets; (7) negligent care of sidewalks; and (8) negligent care, custody, or control of animals. *Id.* § 8542(b). Because the alleged acts of the named agency Defendants are not among those for which sovereignty has been waived under § 8542(b), Plaintiff's state law claims

against the local agency Defendants will be dismissed.

## VII. Conclusion

For the reasons discussed above, Defendants' request that the Court dismiss the Complaint for lack of subject matter jurisdiction under the *Rooker–Feldman* doctrine will be denied. Defendants' request for abstention will be denied as to damage claims, but the Court will defer decision as to abstention on the injunctive relief claims, pending the evidentiary hearing on the Motion for Preliminary Injunction, scheduled for July 28–29, 2003. Defendants' Motion to Dismiss Counts I, II, and IV, relating to claims of denial of substantive and procedural due process will be denied. Defendants' Motion to Dismiss Count III, charging conspiracy under 42 U.S.C. § 1985(3) will be granted, without prejudice to Plaintiffs' right to replead within thirty days. Defendants' Motion to Dismiss Count V will be denied as moot, as Plaintiffs have withdrawn Count V. Defendants' Motion to Dismiss the § 1983 claims in the Complaint, based on the various assertions of immunity, will be denied as to qualified immunity for the individual Defendants sued in their individual capacity; granted as to Defendants McBride, Fiore, and Whitmore (members of the Zoning Hearing Board) sued in their individual capacity, and these claims will be dismissed with prejudice; denied as to the individual Defendants sued in their official capacity; and as to Upper Merion Township, the Board of Supervisors, and the Zoning Hearing Board, Defendants' Motion will be granted without prejudice, with leave to Plaintiffs to amend within thirty days. Defendants' Motion to Dismiss the state law claims against the individual Defendants will be denied. Finally, Defendants' Motion to Dismiss the state law claims against Defendants Upper Merion Township, the Board of Supervisors, and

the Zoning Hearing Board will be granted, and the Complaint will be dismissed with prejudice as to the state law claims against these Defendants.

An appropriate Order follows.